## Lambert's Estate.

*Will—Legacies—Shrinkage of assets—Orphans' court practice.*

Where a specific sum is set aside by the orphans' court to meet legacies payable upon the death of certain life tenants, and there is a shrinkage in value of the principal of such sum at the date of the death of the life tenants, and the legatees accept their depreciated shares awarded to them after the death of the life tenant, they cannot claim the amount of the deficiency from undistributed assets in the hands of the executors upon a subsequent accounting.

Argued Dec. 12, 1913. Appeal, No. 193, Oct. T., 1913, by Pennsylvania Academy of the Fine Arts, from decree of O. C. Phila. Co., Jan. T., 1909, No. 339, dismissing exceptions to adjudication in Estate of John Lambert, deceased. Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Exceptions to adjudication.

GUMMEY, J., filed the following adjudication:
Testator died December 29, 1907, leaving his last will, duly probated, whereby after sundry devises and

bequests of real and personal property, he gave the residue of his estate in trust, to pay the income to Mary F. Lambert and J. Dickinson Sergeant and the survivor of them, for life, and upon the death of either to pay $15,000 to William Sergeant Kendall; upon the death of Mary E. Lambert to deliver certain specific articles together with the sum of $10,000 to the Abington Library at Jenkintown, and upon the death of both life tenants to pay $45,000 to Mary E. Lowell, absolutely; $50,000 to George W. Norris, absolutely; $35,000 to William Felix Norris, absolutely; $30,000 to the Pennsylvania Academy of Fine Arts in trust, etc.; $1,000 to the Girard Trust Company, in trust, etc., and also to pay certain other bequests, which were revoked by codicil and therefore not necessary to recite; and the residue of his estate testator gave to George W. Norris and William Felix Norris, absolutely.

By codicil testator made further pecuniary bequests and provided as follows:

"In case my estate shall prove insufficient to pay in full all the legacies given by my said will and by this codicil, I direct that the order of abatement shall be as follows: First, the legacies given by this codicil; second, the residuary legacies given in my said will; third, the legacies other than the residuary given in my said will."

At the audit of the executors' first account it appeared that there were insufficient assets at the appraised values to pay in full all the legacies given by the will and codicil, and therefore, in accordance with the directions of the testator, the legacies given by the codicil abated; and the auditing judge awarded to the accountants the full amount of the residuary legacies above referred to aggregating $187,025 ($186,000 in pecuniary legacies, plus $1,025, being the appraised value of specific articles bequeathed to the Abington Library), to be held in trust in accordance with the terms of the will.

The accountants invested this award in certain ground
rents, stocks and bonds (and under the tenth clause of
the will they were empowered to use their discretion),
and Mary E. Lambert and J. Dickinson Sergeant hav-
ing died, the executors filed their account of this par-
ticular trust, which was duly audited and an adjudica-
tion filed thereupon October 11, 1911, and distribution
made to the parties thereunto entitled in remainder,
including Mary E. Lowell, and the Pennsylvania Acad-
emy of Fine Arts; and as at this time some of the
securities were not worth as much on the market as
they were at the time the trustees invested in them, a
revaluation was had and the securities were awarded
in kind at values based upon the new appraisement;
with the result that the respective legatees received less
than the amounts bequeathed them; and some of them
are now before the present auditing judge claiming that
the difference be paid to them out of the present fund
for distribution, which is residuary estate and arises
from the sale of real estate and personal securities.
The auditing judge is of the opinion that this conten-
tion cannot be sustained. If this were the case of a
fund having been set aside as security for the payment
of certain specified amounts upon the death of the life
tenants, or if the legacies had abated by reason of in-
sufficient assets, it might well be argued that the inten-
tion of the testator, that the legacies should be paid in
full, was controlling; but these legacies did not abate;
on the contrary, the judge who audited the first ac-
count awarded the full amount of the legacies to the
accountants, his language in this respect, as set forth
in the adjudication being, "the fact that in this residuary
clause he gives legacies in remainder to the amount of
$186,000 shows that the residuary estate must have
amounted to that sum after the payment of the collat-
eral tax. There will be set aside therefore for this trust
after the payment of the tax, the sum of $186,000 to-
gether with the appraised value of the specific bequests

mentioned in the residuary clause. The balance of the estate will be awarded pro rata on account of the legacies given in the codicil;" and in the schedule of distribution annexed to the adjudication credit is taken for the amounts of the residuary bequests, including the appraised value of the books, etc., given to the Abington Library, the award with respect to the same being as follows, "which sum of $187,025 is to be held in trust by the executors and the income thereof to be paid one-half to Mary E. Lambert and the other one-half to J. Dickinson Sergeant in accordance with the terms of the will." The trustees invested this award for the purposes of the trust, and it is to be presumed that the investments which they made were satisfactory to the legatees in remainder, as otherwise they would have criticised the character of the investments at the audit of the trustees' account, confirmed nisi October 11, 1911. If, at the time of distribution, the stocks and bonds held for the trust estate had shown an advancement in market values, can it be seriously contended that the legatees would not be entitled to the benefit thereof? And, conversely, they should now bear the loss, although in this connection it should be said that the alleged loss is not a liquidated one but arises through a reappraisement, the securities themselves which were awarded to the respective legatees having been retained by them, and it was stated at the audit that they are still unsold. Neither in the view of the auditing judge is the question affected by the fact that in receipting for their awards the legatees stipulated that doing so should be without prejudice to their right "to make a claim for any deficiency at any "subsequent audit of the estate of John Lambert, deceased, if legally entitled thereto," as this was but a wise precaution on their part in order that they might not be estopped from having the question which they now raise, judicially determined. The claim is not allowed. (See generally, Michener's Est., 227 Pa. 284; Moyer's Est., 141 Pa. 125.)

The account shows a balance of principal
   for distribution of $646,596.89, and after
   taking credit for payments to legatees as
   therein set forth (exclusive of legacies
   bequeathed by the codicil) there remains
   a balance of......................... $388,607.89
From which deduct: Cost of certified copy
   of this adjudication..................       3.50
                                           ─────────────
     Balance........................... $388,604.39

which is awarded to the persons entitled to receive the
same, named in the petition for distribution, and in the
proportions herein set forth, subject to payments here-
tofore made on account of distribution as appears in
the account filed.

The account also shows a balance of income for dis-
tribution $34,223.69, which is awarded to the persons
entitled to receive the same, subject to payments here-
tofore made on account of distribution; any income
accrued and unpaid at the time of the death of either
deceased life tenant, to be paid to his or her personal
representative.

On exceptions to the adjudication, GEST, J., filed the
following opinion:

The difficulty in this case is more apparent than real
and arises from the testator having in the codicil to his
will inverted the usual order of the preference and abate-
ment of the legacies bequeathed by them.

The testator by his will left his residuary estate in
trust for certain life tenants and at their death gave
pecuniary and specific legacies aggregating $187,025,
and disposed of the residue.   He afterwards unexpect-
edly acquired a large additional estate, and by a codicil
bequeathed other legacies, adding, that if his estate
should prove insufficient to pay in full all the legacies
given by both will and codicil they should abate in
this order, first the legacies given in the codicil, second,

262, (1914).]                    Opinion of Court below.

the legacies given in the residuary clause of the will, and, third, the legacies in the will other than those in the residuary clause. This established the priority of payment of the legacies as follows: First, the legacies given in the will other than those in the residuary clause; second, the legacies given in the residuary clause of the will, and third and lastly, the legacies given in the codicil.

At the audit of the executors' account the estate as it then existed was not sufficient to pay all the legacies in full, and the auditing judge awarded in full of those legacies bequeathed in the will other than those in the residuary clause, and then awarded securities appraised at $187,025, in trust under the residuary clause, the balance being distributed pro rata on account of the legacies bequeathed by the codicil. In doing this, the auditing judge was clearly right. The bequests in the residuary clause of the will became under the provisions of the codicil equivalent to the bequest of a definite sum in trust for certain life tenants with remainder at their deaths to the legatees in different proportions or amounts. No exceptions were filed to the adjudication and no request was made by anyone concerned to have an additional sum reserved to protect the legatees in remainder from a possible depreciation of the assets during the life tenancy, as was ordered in the similar but not identical case of Lathrop's Est., 3 Pa. Dist. Rep. 100. Perhaps if such request had been made, it might have been granted, but the auditing judge was not called upon to do this of his own motion, nor was the accountant bound to ask the judge to do so, when the legatees whose interests were concerned did not think it necessary or worth while to make the request. After the death of the life tenants, the trustees filed their account of the assets in their hands and the same were awarded to the legatees without objection on their part. It is now too late at the audit of the second account of the executors when another fund is brought

268 LAMBERT'S ESTATE.

Opinion of Court below—Opinion of the Court. [57 Pa. Superior Ct.

'before the court, for these legatees to claim that a deficit should be made good therefrom, which is stated to be caused by a depreciation in the value of the securities embraced in the trust. We are of opinion that this cannot be done. See Michener's Est., 227 Pa. 284; Moyer's Est., 141 Pa. 125.

The exceptions are dismissed.

*Errors assigned* were in dismissing exceptions to adjudication.

*Maurice Bower Saul,* with him *John G. Johnson,* for appellant, cited: Lathrop's Est., 3 Pa. Dist. Rep. 100.

*M. Hampton Todd,* with him *Wm. F. Norris,* for appellees.—Partial accounts of administrators and executors when confirmed absolutely are final in regard to all that they contain: Rhoad's App., 39 Pa. 186; Moyer's Est., 141 Pa. 125; Brown's App., 190 Pa. 464; Michener's Est., 227 Pa. 284.

OPINION BY HEAD, J., July 15, 1914:

An attentive consideration of the question involved in this appeal, together with the able arguments of counsel, convince us that the learned auditing judge and court in banc reached the correct conclusion. The opinions respectively filed by the said auditing judge and court clearly indicate the reasoning on which their conclusion is based. We do not think any attempt on our part to elaborate this reasoning would be productive of any beneficial result. We therefore base our decree on these opinions. The assignments of error are overruled.

The decree is affirmed.