## Jones's Estate.

94

Argued December 7, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Robert V. Bolger,* for appellant.

*Sheldon F. Potter,* for appellee.

OPINION BY MR. JUSTICE KEPHART, January 2, 1934:

Mary H. Jones died May 19, 1922. In her will she made a number of absolute bequests of money payable upon her death, three bequests in trust, the income to be applied as specified in the particular clause, and then, by the 17th paragraph, a bequest to her granddaughter, Mary Maude Howell, of $5,000 absolutely when she should attain her twenty-fifth birthday. A similar bequest was made to a grandson, but he had attained the

age of 25 when his grandmother died, while Mary Howell was 14 years old at that time.

By paragraph 26 the residue of the estate was devised and bequeathed to the executors to hold in trust and to dispose of the principal and income to children and grandchildren, Mary being among them.

After paying all the absolute bequests and setting up the specific trusts, there remained considerable of testatrix's estate. The executors filed their first account in 1923, and in that adjudication Judge THOMPSON stated: "......the legacies of $5,000 each to testatrix's grandchildren to be held by the accountants pending their respective arrivals at the age of twenty-five years;...... The award of income to Mary Maude Howell to be paid to her guardian, and all awards to be subject to any payments heretofore made on account of distribution." By the same judge's amended adjudication made shortly thereafter, he said: "In my adjudication in this estate filed February 15, 1923, I directed the income on the legacy of $5,000 to Mary Maude Howell be paid to her guardian. ...... I therefore now direct that the income......be paid to those entitled to the income on the residuary estate of the testatrix." Judge THOMPSON'S original and amended adjudications are confusing. In the former he treats the fund as segregated from the residue and in the latter as part of it. However, it is only through residue that income may be had on the balance of the estate. It is little wonder that the present orphans' court was puzzled in reaching a conclusion in the present controversy, where its award was to be made under the mandatory provisions of the will.

The executors invested the $5,000 in a first mortgage. It was a legal investment, and Mary Howell having reached the age of 25 the executors and trustees attempted to settle her legacy by tendering the mortgage itself, but as the real estate had depreciated in value below the face amount of the mortgage, this offer was refused and the present action was instituted to determine

whether the legatee is compelled to take the mortgage as such or be paid in cash. The court below held that she was entitled to cash.

No gift or other disposition of this sum, or the income therefrom, to take effect immediately on testatrix's death, was made in the paragraph creating the gift, but, instead, the gift was made conditional on the legatee's reaching the age of 25 years. There was no direction in the will to hold this sum in a suspended account until Mary reached 25. There was simply a failure to make a specific disposition thereof from the time of testatrix's death until Mary reached 25, but the phrase used in paragraph 26, ". . . . . . all the rest, residue, and remainder of my estate, real and personal," includes everything which testatrix owned at the date of death, except that which she had disposed of by will to take effect immediately on death. This residue included the corpus as well as the income on the suspended legacies, whether contingent or not. The corpus of the legacies had the possibility of continuing as part of the residuary estate if the legatees failed to attain the qualifications required, but, in any event, during the time until they should meet such qualifications, the legacies were to be held in the residue.

The adjudication on the amended account to the effect that the income on the $5,000 held by the executors for Mary Maude Howell should be paid in accordance with the terms of the residuary trust was correct, with the addition that under paragraph 26 it was to be held by them as trustees. As stated above, no gift of income was made other than by the residuary paragraph. The case in this respect is similar to Mereto's Est., 311 Pa. 374. In that case gifts were made of $10,000 and $25,000, to be held until the beneficiaries should arrive at the ages of 35 and 55 years, respectively. The court below carved out of the general residue the latter item, and found, as it had then segregated this fund, that there was no provision for income payments during the interim prior to the time the beneficiary arrived at the age of 55. It

was decreed because of this, and as such an interpretation might violate the rule against perpetuities, that the future payment of the corpus was accelerated to the date of testator's death. We reversed that order and held that, although the testator had stated that all of his estate fell into the residue, and had subsequently disposed of this and other specific sums, and had then, in creating the income-bearing residuary trust, employed the phrase, "all that remained of his residuary estate," nevertheless this fixed sum, suspended in payment to a future date, was part of the income-bearing residue. There it was to be held and the income from it paid to the parties designated as income beneficiaries of the general income-bearing residuary trust. When the party arrived at the age specified, he was to receive the money. The same result is here reached.

The effect of the provisions of this will is the same as though testatrix had specifically directed the payment of $5,000 from the residue of her estate. This legacy was made a charge against the whole residue, the income from the whole residue being disposed of in the provisions concerning the residuary estate: Mereto's Estate, supra.

The whole residue the trustees were directed to invest and reinvest in good securities. No segregation of this legacy should have been made until time for its payment to the legatee arrived. It was, until the occurrence of the event upon which payment was to be made, a portion of the residue, remaining unaffected by the rise or fall in value of any particular investment. Under the terms of the will, the legacy is payable in cash.

We understand there are ample assets in the residue from which this legacy may be paid in cash, but if this security were the only item, there is no question of the good faith of the executors and trustees in lending the money on a first mortgage secured by real estate which though now depreciated in value as a result of the great economic depression, at the time of investment was

sound.   It was a legal investment on ample security. While it is true the general rule is that for the payment of a cash legacy or other cash charge, the estate must remain in such condition that the money directed to be paid therefrom can be paid at the time designated, future dispositions of money, whether under wills of testators or otherwise, must be subject to the ordinary vicissitudes of future payments, including economic or other business depressions which affect everyone.  Under such circumstances it is not necessary to comply with the general rule stated above, that an executor or trustee hold money in a strong box uninvested and undeposited in a bank.  If the rule does require this, it is entirely too harsh; it is unreasonable to exact from a fiduciary, acting prudently, who suffers a loss because of an extraordinary economic disturbance, higher knowledge, skill and diligence than is expected of prudent business men.  We therefore hold in such cases that where loss occurs through no fault of executors or trustees, acting in good faith, but because of an extraordinary occurrence precipitating loss upon the honest and diligent and ignorant and slothful alike, the executors and trustees are not required to make good the difference in value from their own pockets, but may turn over the security or reduce it to cash and turn it over to the beneficiary.

Acting on the assumption that cash to pay this legacy may be procured from the residue of the estate, we direct that this be done, and that the mortgage in question be substituted in the residue for the cash so paid over; and that on any future accounting the trustees may take credit for such disposition.

The decree as modified by this opinion is affirmed; costs to be paid from the residuary estate.