# Brooke's Estate.

Argued January 27, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Randolph Stauffer*, with him *Zieber & Snyder*, for appellant.

*Thomas B. K. Ringe*, with him *Owen Brooke Rhoads*, for appellees.

OPINION BY MR. JUSTICE DREW, March 30, 1936:

Testator, who died in 1930, bequeathed $20,000 to The Pennsylvania Trust Company of Reading, in trust to pay the income to his wife for her life, and at her death to distribute the principal among certain remaindermen in specified proportions. Except for the specific bequest of a watch, the residue of his estate was given to his sister, executrix under the will. Upon the death of the life tenant in June, 1933, the trustee's account was presented for audit. Exceptions filed by remaindermen were generally sustained and a surcharge imposed upon the trustee. From the final decree dismissing exceptions to the adjudication the trustee has appealed.

At his death testator's estate was appraised at approximately $100,000, of which over $73,000 remained for distribution. This sum included some $24,000 worth of

bonds and mortgages, the balance being in shares of bank stock. After some negotiation it was agreed in behalf of the executrix and the trustee that certain bonds and mortgages should be distributed in kind to the latter, together with $800 in cash, as principal of the trust. For that purpose the bonds and mortgages were valued at par. No reappraisement or further investigation into the value of the securities appears to have been made by the trustee before the acceptance of the trust. These securities were retained by the trustee, and, with a few variations, constituted the fund offered by it for distribution at the death of the life tenant. They were of two general classes: (1) single bonds, each secured by a single mortgage of the same amount as the bond; (2) bonds, each of which was part of a larger issue secured by a single mortgage, the bonds being issued in the first instance or assigned to this trustee, but not in trust, in turn assigned by it to testator, and remaining among his assets at his death. No surcharge was imposed with regard to the bonds and mortgages in the first class, and as to them no questions are raised on this appeal. We shall consider, as typical of the second class of invest ments, the bonds issued to appellant company by Isaac and Jacob Silverman, secured by a mortgage upon a large block of real estate in Altoona.

Upon the security of that mortgage, $450,000 in amount, 340 bonds were issued by the Silvermans, of which three, aggregating $5,000 were assigned to testator by appellant and were accepted by it from his executrix for the trust. It appeared to be appellant's custom to place mortgages of this sort and to sell the bonds to various customers as the demand arose. Some of the bonds were assigned by it to trust estates in its custody. Each bond contained a separate warrant of attorney to confess judgment and satisfy the debt out of real estate of the obligor or obligors, with the usual waivers. The assignment of a bond by appellant carried with it a fractional interest in the underlying mortgage, and all

rights and remedies incident to the bond and its mortgage security. At the time of the audit bonds of the Silverman issue totaling $54,000 were held by trust estates, including the Brooke Estate, $391,000 by individual investors who had no fiduciary relationship with the appellant company, and $5,000 by that company itself. The loan was granted to the Silvermans by appellant in 1928, at which time the mortgaged property was valued at $750,000. At the audit experts for appellant and for appellees respectively fixed its value as of October, 1931, (the time of the inception of the present trust) at approximately $540,000 and $560,000; its value at the time of the audit they found to be close to $500,000. The mortgage thus represented considerably more than two-thirds of the value of the property when these bonds were accepted by appellant for the Brooke trust. Taxes on this property for 1932 and 1933 were in default at the time of the audit. It was provided in each bond that upon default in the various obligations, including payment of taxes, the whole principal of the bond should become immediately due and payable at the option of the obligee.

Appellant likewise accepted a $2,000 bond under a mortgage for $30,000 executed by one Davidow on real estate in Wilkes-Barre. Of the bonds secured by this mortgage $17,000 were held in other trust estates and $11,000 by individual investors. An expert witness called by appellees valued the mortgaged property at $24,500 as of October, 1931, and at $18,000 as of the date of the audit. The $2,000 bond he appraised as worth $800 in October, 1931, while $300 was fixed by him as its current value. His testimony was not controverted by any witness for appellant. He further stated that he was familiar with the two properties covered by the mortgage and that a large warehouse on the more valuable of the two had been unoccupied for at least two years and had been allowed to go without any care, that the property was in very poor condition and was "fast

going to ruin," and that, "if permitted to continue, in the next few years there will be very little left." One of the two buildings on the other property under the mortgage was likewise "in a poor state of repair" and "out of place in the neighborhood." It, too, had been vacant for at least two years.

The auditing judge found negligence in the management of the Davidow investment, valued the $2,000 bond at $500, and surcharged the trustee with the difference, $1,500. Although finding no negligence in the management of the remaining investments, he was of the opinion that the bonds which were parts of larger issues were not within the class of trust investments permitted by statute and that they did not reflect the skill, prudence and caution required of a trustee. These bonds he found to have been in default in the payment of taxes or interest. In view of the economic conditions of the times and the absence of a sufficient market for the bonds, and in the light of the fact that the appellant company was in process of liquidation, he refrained from requiring a sale of the bonds or entering a money decree for their full amount, in the interests of the estate. The Silverman bonds were found by him to be worth twenty per cent less than their par value, and each of the other bonds ten per cent less than par. The trustee was surcharged with the sum of these deficiencies, $1,600, and a distribution of the bonds in kind to the remaindermen was decreed. A compensation of $800 to the trustee was ordered to be credited against the total surcharge of $3,100.

We are satisfied that the auditing judge's disposition of the case was eminently fair under the circumstances, and that appellant has no ground for complaint. After a careful examination of the record, we are not disposed to interfere with his discretion. The bequest of $20,000 to appellant to hold in trust for the specified purposes was, apart from the gift of a watch, the only specific or pecuniary bequest in the will. Pecuniary legacies are of course ordinarily payable in cash: see *Simpson's Est.*,

253 Pa. 217, 223; *Komara's Est.*, 311 Pa. 135, 139; *Jones's Est.*, 314 Pa. 93, 98. Apparently the trustee did not demand cash, but was willing to take securities owned by testator, at their par value, without reappraisement or investigation of their then value. It does not appear that these appellees acquiesced in this action of the trustee, and indeed they now vigorously contend that they had no notice of or representation in the adjudication in which the securities were formally awarded to appellant. In fact there was no market for those securities at the time, and in the case of one investment, according to the testimony, the value of the mortgaged property was less than the amount of the mortgage. In at least one other instance the mortgage represented more than the statutory limit of two-thirds of the fair value of the property. In the case of the Davidow bond, the value of the investment at the inauguration of the trust was fixed by uncontradicted testimony at about two-fifths of its par value. In the face of all this the trustee, having accepted the investments at par, seeks credit for each of them at the same value, and would distribute them to the remaindermen at that value in discharge of the trust. Its position is without merit.

Appellant argues that the bonds secured by fractional parts of mortgages are within the class of investments permitted by statute. The relevant provisions are found in section 41, paragraph (a) 1, of the Fiduciaries Act of June 7, 1917, P. L. 447, as amended* by the Act of April 26, 1929, P. L. 817, which provides: "When a fiduciary shall have in his hands any moneys, . . . such fiduciary may invest such moneys in . . . first mortgages on real estate in this Commonwealth, securing bonds or other obligations not exceeding in amount two-thirds of the fair value of such real estate; . . . or in bonds

---

* Intervening amendments were made by the Acts of March 19, 1923, P. L. 23, and June 29, 1923, P. L. 955. The section has been further amended by the Act of July 2, 1935, P. L. 545. No question under the latter amendment is here involved.

. . . of one or more individuals, secured by a deed or deeds of unencumbered real estate in this Commonwealth conveyed to a corporation . . . in trust for the benefit of all such bondholders." The mortgages securing the bonds in question were given to appellant individually and in its own right, and, as pointed out above, many of the bonds secured by those mortgages were assigned by it to outsiders with whom it had no fiduciary relationship. It is clear, therefore, that the securities in question are not within the class of bonds permitted by this section, since they are not secured by real estate conveyed to a corporation "in trust for the benefit of all such bondholders." Are they permitted by the provision allowing investment in "first mortgages on real estate in this Commonwealth, securing bonds or other obligations not exceeding in amount two-thirds of the fair value of such real estate"? Appellant would infer from this provision permission to invest in fractional parts of such mortgages, in which other fractional parts are assigned beyond the trustee's control. We think no such inference may be drawn. A subsequent portion of the section expressly permits investment in "trust certificates, issued by a trust company . . ., certifying that the holders thereof are respectively the owners of undivided interests in deposits, with such trust company, of securities" proper for trust funds. Permission to invest in these fractional parts of mortgages may not be implied from a general authorization of first mortgages when such permission is not included in the provision expressly concerned with fractional investments, and particularly when the permitted fractional investments are restricted to funds of securities in which the whole fund is in the custody of the trust company. It may be further noted that this is not a case of participation in a "general trust fund of mortgages," or mortgage pool, within the meaning of the Act of April 6, 1925, P. L. 152, inasmuch as the original mortgages here in question were not given to appellant in any trust capacity.

Nor can we say that the court below was wrong in concluding that these investments were imprudent. That conclusion was based upon the fact that a number of the bonds issued upon a single mortgage in which this estate shared were held by outsiders over whom the trustee had no control, and that each such assigned bond carried with it the power to enter judgment upon default and sell the mortgaged premises in satisfaction thereof, independently and to the exclusion of other bondholders, whose only remedy would be to share in the proceeds of the sale. Appellant does not deny the existence of this danger. Its only answer is that such a possibility "could be fully guarded against by a vigilant trustee and the mere fact that a lack of proper vigilance with respect to the investment might result in loss should not condemn the investment itself as an imprudent one." But the fact is that this trustee has been far from vigilant. Its officers could show no agreement or other arrangement with outside bondholders to prevent their acting in disregard of the interests of the trust estate. In at least one instance, that of the Silverman mortgage, nearly four-fifths of the bonds, and therefore of the mortgage itself, were held by outsiders. Whatever steps the trustee might have taken to protect the estate's interest in these bonds, it has in fact taken none, and now, at the termination of the trust, it would distribute the securities to the beneficiaries bare of any such protection. Clearly, under these circumstances, it cannot claim to have acted with the skill, prudence and caution which the law demands of a trustee.

*Gibson's Est.*, 312 Pa. 359, is relied on by appellant. In that case a guardian invested his ward's funds in so-called "divided" mortgages. Bonds given to several individuals were secured by a single mortgage in which the various bondholders were named as mortgagees. The lower court held that "the slight deviation from the language of the statute [Acts of March 19, 1923, P. L. 23, and June 29, 1923, P. L. 955, amending the Act of 1917,

supra], as concerns the form of the investment, was not, under the circumstances [there] presented, so material as to render the guardian liable on such loans," so far as those loans were made on ample security. In affirming, we refrained from considering whether the investments in question would require a surcharge in the event of loss, and pointed out that it had not been shown that a loss had occurred or would necessarily occur. In the present case these investments were accepted and retained by the trustee at an improper value, without investigation or reappraisement. It cannot be doubted that the dangers to which they were subject at the hands of independent bondholders constituted one of the several factors responsible for their depreciated worth. This depreciation is a loss for which the trustee must answer unless it can show statutory justification or the required prudence in accepting and retaining the investments as it did. In that respect it has failed, and it must therefore submit to the consequences. A fiduciary who accepts, in lieu of a pecuniary legacy, securities which are not legal investments, without making reasonable investigation of the relevant facts concerning them, is liable for loss: *Komara's Est.,* supra.

We have examined the record with care, and are convinced that appellant is without cause to complain of the action of the court below. The finding of negligence in the management of the Davidow investment is amply supported by the evidence, as are the findings with respect to the other investments. The amount of surcharge fixed by the auditing judge is reasonable, if not lenient, and his disposition of the case under all the circumstances is equitable. There is no ground for disturbing the decree.

Decree affirmed at appellant's cost.