### Connell's Estate

Before Van Dusen, P. J., and Stearne, Sinkler, Klein, and Bolger, JJ.

*Robert T. McCracken, M. T. McManus,* and *Joseph Neumann Smith,* for exceptants.

*A. Albert Feldman* and *William M. Boenning,* contra.

STEARNE, J., March 18, 1938.—The auditing judge decreed that the guardian of the late minor replace with

cash the amount of the principal of a first mortgage held by the fiduciary as an investment. It is the sole asset of the estate. Exceptions are filed by the fiduciary.

Most of the facts are undisputed. The mortgage is secured on real estate with dimensions of approximately 25 feet by 130 feet. Upon it are erected seven small three-story dwellings, of the tenement type, antiquated, in ill repair, and with few conveniences. They are located at 507-15 W. Oxford Street and 1601-03 N. Randolph Street, Philadelphia. The accountant is a lawyer of experience and standing. *In 1925* this mortgage investment of $10,500 (since reduced to $10,350) was offered to a client of the attorney. The client accepted the investment, and the attorney was employed to draw the papers and attend settlement, and thereafter acted as agent for the collection of the interest. A second mortgage existed, secured upon the premises, of $8,500, held by a building and loan association. *In 1926* the real estate was sold, subject to the mortgages, and the new owner paid $3,000 for the equity therein. *In 1927* the holder of the first mortgage (now in question) died. By his will, duly probated, he appointed his attorney (the accountant herein) and a trust company as executors. *In 1928* the mortgage was called; cash was necessary in the distribution of the estate. The owner experienced difficulty in replacing the mortgage, and so advised the accountant. The owner then engaged the services of a mortgage broker, who was equally unsuccessful, and he, too, so advised accountant. The owner and broker then appealed to the accountant to assist them in such mortgage replacement. The accountant was guardian of the estates of two minors, Marie and Helen Cunningham, and in whose joint estate were available the necessary amounts of cash required. Accountant testified that he looked over the real estate and it appeared to him to be in as good, if not better, condition than when the mortgage was secured in 1925. Accountant agreed to take over the mortgage as part of the estate of

his wards. He assigned it to himself, as guardian, from himself and the trust company as executors of his deceased client's estate. It was shown that upon such assignment of mortgage the owner was required to pay $1,032.97 additional, representing accrued interest, taxes, broker's fees, and title costs. It was also testified that the owner had made certain repairs and improvements to render the houses tenantable, although such cost was not accurately established. *In 1933* Marie, one of the minors, came of age. An account was filed by accountant as guardian of *her* estate. In the *joint estates of both minors* were four other mortgages in addition to the mortgage here in question. Apparently *all* mortgages were in a distressed situation. As to the mortgage now under examination: In the interim between 1928 and 1933 the value of the real estate had become greatly depreciated; the owner abandoned his investment; *the accountant, as mortgagee, had entered into possession,* and was and is collecting such rents as he is able. It is conceded that in 1933 the mortgage had greatly depreciated and was probably worth at most $7,500. Despite this situation, without the auditing judge's knowledge or sanction, accountant allotted to Marie, as her share of the joint estate, the four mortgages referred to at $9,853.76, and retained the $10,350 mortgage in question as Helen's sole share and asset in said joint estate. Helen's interest was not represented by a guardian ad litem, nor was there any testimony that at this time a separate appraisement was had, or any attempt made to ascertain a fair independent valuation of such mortgage. The investment was retained and continued, and was accounted for in the present proceeding in 1937, when the late minor became of age. She now repudiates the investment, as irregular and improvident, and asks that it be replaced with cash.

When the investment was questioned by his late ward the burden was cast upon the accountant to establish the soundness of his action: Hart's Estate (No. 1), 203 Pa. 480, 486. The accountant attempts to meet this burden

by pointing out that the $10,500 first mortgage which he so acquired was followed by a second mortgage of $8,500; that in 1926 the owner paid $3,000 over said mortgages to acquire the real estate and later advanced the further sum of about $1,000 when accountant took over the mortgage by assignment in 1928. He testified that before taking over the mortgage for this estate, while thoroughly familiar with the premises and the neighborhood, he did go upon the ground, looked over the situation, and still favorably regarded the investment. What he did *not* do was to call in real estate dealers who were familiar with real estate values in that neighborhood and seek independent advice and appraisements as to the value of such real estate. In the opinion of this court when a fiduciary undertakes to transfer assets from an estate, whereof he is co-fiduciary, to himself as sole fiduciary of another estate, a very heavy burden is thereupon imposed upon him, so acting as buyer and seller, to demonstrate that such a transaction is fair and just, and that such investments thus acquired are safe and sound and such as would have been made by an ordinarily careful and prudent man. Accountant, in the facts of this case, wholly failed to meet this burden. Despite his admitted knowledge that both the owner and the broker experienced difficulty in placing the mortgage, accountant, solely upon his individual judgment, without independent reappraisement, advice or investigation, sold the mortgage to himself as guardian from an estate of which he was co-executor. Had this mortgage been the individual property of the accountant, such a transaction would have constituted a breach of trust and the fiduciary becomes an insurer: Tracy et al., Co-Trustees, v. Central Trust Co., 327 Pa. 77. It may well be regarded that there is no distinction, in principle, between such a sale of an investment by a fiduciary which he owns individually and one which he owns as fiduciary for another estate. But in any event we decide as a matter of law that where one individual acts as buyer and seller in dual trusteeships, he must act

with an extraordinary degree of care and good judgment. In our opinion there must be a bona fide and careful reappraisement, or proof of a careful, bona fide, independent valuation and investigation before such a sale is consummated. The sole opinion of the fiduciary, buttressed by a record of the mortgages and sale price of the real estate in question (more than a year prior) is not sufficient. The owner and mortgagees may have been mistaken—as, indeed, appears to be the case. The true test is the ascertainment of value not only of the real estate in question, but of the values of surrounding properties, with a general picture of the real estate situation in that locality. We are of opinion that the accountant failed to take obvious precautions and displayed a manifest lack of care and prudence. See Ladner, J., in Abbott's Estate, 149 July term 1909, and Gest, J., in O'Donnell's Estate, 1178 April term 1928. For this reason the investment was irregular and improper when he acquired it as guardian from himself as co-executor.

Another most serious breach of duty occurred in *1933* when this accountant, upon his sole responsibility, and without reappraisement, or independent valuation or investigation, and *when he was mortgagee in possession,* allotted this mortgage to his minor's estate. His responsibility is considerably enlarged when it is remembered that this investment constituted the ward's entire estate. While the facts are not precisely the same, nevertheless Brooke's Estate, 321 Pa. 529, 534, illustrates the necessity of a reappraisement or investigation of the real value of such investment upon such transfer or allotment. There appears to be no difference in principle between parting and dividing the joint estate of two beneficiaries (*keeping* one of the allotted parts in continuance of the trust) and in *purchasing* a new investment for the continuing trust. In the latter case the provisions of the Act of April 26, 1929, P. L. 817, 819, 820 apply. The fair value of the real estate must be appraised as stipulated.

What applies to the latter situation applies to the former. This was not done.

The auditing judge found as a fact that from 1928 and henceforth the buildings were antiquated and dilapidated; the neighborhood was poor; the rentals were never sufficient to pay the carrying charges and that the real estate was not then, and is not now, worth the face of the mortgage. We are of opinion, despite a rather unsatisfactory record, that the evidence sustains his findings.

The exception of the late ward becomes moot if the exceptions of the accountant are dismissed.

We are unanimously of opinion that the conclusions of the auditing judge are sound and correct. All exceptions are dismissed and the adjudication is confirmed absolutely.