## Hays' Estate

*Maurice A. Granatoor* and *Herman P. Abramson,* for petitioner.

*Thomas A. McNab* and *John Stokes Adams,* for respondents.

LADNER, J., July 29, 1938.—From the master's report and his findings of fact, all of which appear to be founded upon adequate evidence and which we will therefore not disturb, it appears that testator, George A. Hays, died July 31, 1928, leaving a will, dated May 28, 1926, together with codicil, dated April 18, 1927, duly probated before the Register of Wills of Philadelphia County. Letters testamentary were granted by the register to the West Philadelphia Title & Trust Company and Walter E. Hays, executors named in said will. Subsequent to the granting of said letters, the West Philadelphia Title & Trust Company merged with the Integrity Trust Company under the corporate name Integrity Trust Company.

On April 3, 1929, the Integrity Trust Company, describing itself as successor by merger to the West Philadelphia Title & Trust Company, and Walter B. Hays filed an account as executors, which was duly audited by the late Judge Henderson and adjudicated June 10, 1929. In said adjudication the learned auditing judge after finding the balance of the personal estate to be $463,-968.55, awarded pursuant to an agreement dated May

29, 1929, in writing, signed by all parties in interest, $169,965.41 thereof in mortgages to the Integrity Trust Company, in trust for Frank G. Hays in compliance with paragraph seven of the will which directed the sum of $200,000 to be paid to the West Philadelphia Title & Trust Company, in trust, to pay the net income thereof quarterly unto Frank G. Hays during his lifetime, etc., the balance of the trust fund being made up by an allotment of certain real estate valued at $30,054.59, pursuant to paragraph five of said agreement. After making said award Judge Henderson in his adjudication directed as follows:

"Counsel will prepare a schedule of distribution, in duplicate, and certify to its correctness and conformity with this adjudication, which will be agreed to by the parties or their counsel, and when approved and hereto annexed will form part hereof."

A schedule of distribution was duly presented to the auditing judge on behalf of the Integrity Trust Company and Walter B. Hays as executors, approved by the auditing judge and filed under date of July 24, 1929. On July 13, 1934, that is 11 days short of five years from the date of the schedule of distribution, a citation was granted on petition of Frank G. Hays, cestui que trust, on the Integrity Trust Company and Walter B. Hays to show cause why "the adjudication and the awards should not be reopened and reheard, and as thus reopened the same should not be referred to the Honorable George Henderson, auditing judge, for re-audit of the account of the executors with respect to the distribution to be made to the Integrity Trust Company as trustee for Frank G. Hays, and to Integrity Trust Company and Walter B. Hays as trustees of the residue, and correction of the adjudication and schedule of distribution made to award to the Integrity Trust Company as trustee for Frank G. Hays the sum of $169,965.41, in cash or proper securities."

To this petition and citation, separate answers were

filed as follows: On September 10, 1934, by the Integrity Trust Company and Walter B. Hays, executors and trustees of the residuary trust under the will of decedent, and on the same date by the Integrity Trust Company alone as trustee, under same will, for Frank G. Hays, petitioner. On August 19, 1936, answers were also filed by John W. Hallahan, guardian ad litem for George Hays Guyer, a minor, and for George A. Hays, 2d, also a minor. Apparently the matter was permitted to rest undisposed of until March 22, 1937, when a replication was duly filed. On March 29, 1937, a motion was made for the appointment of a master, on which day the present master was appointed.

Three principal matters were urged upon the master as furnishing grounds for relief prayed for by petitioner. They were: (1) That the Integrity Trust Company as successor by merger to the West Philadelphia Title & Trust Company did not as such succeed to the right which the West Philadelphia Title & Trust Company had as trustee named in the will, to accept and retain investments other than legal investments for trust funds; (2) that the schedule of distribution awarding to the Frank Hays trust certain mortgages was in fact never approved or agreed to by petitioner; (3) that the mortgages owned by decedent and accepted by the Integrity Trust Company as a distribution in kind were of a much less value than the face value placed upon them in the distribution.

Before proceeding to review the master's disposition of the three questions raised it is necessary to dispose of a fourth question which arose because petitioner's counsel sought to raise other questions based on matter not pleaded in the petition for review. While he took such testimony subject to objections his final conclusion was to hold it inadmissible and refuse petitioner's requests for findings of fact thereon. The master's action in so ruling is amply sustained by the authorities cited by him, among which is Turnbull's Estate, 88 Pa. Superior Ct. 482, in which it was held at page 488:

" 'A plaintiff in equity does not recover on proofs alone but on his pleadings and proof. He must aver in his bill all matters essential to entitle him to recover, and neither implied allegations nor proof of matters not alleged can be made the basis for equitable relief' ".

See also Caveny v. Curtis et al., 257 Pa. 575, 581, Luther v. Luther, 216 Pa. 1, Troutman's Estate, 270 Pa. 310, 319, and Goslin, Admr., v. Edmunds, 325 Pa. 154, 158.

The long delay between the dates of filing the petition, the replication, and the motion for appointment of a master—nearly three years—would seem to emphasize the need of the application of this salutary rule of procedure rather than otherwise. Accordingly, we find no error in the disposition that the master has made of this question and dismiss all exceptions relating thereto.

The master having so ruled proceeded to discuss the three questions above set forth, all of which he held properly raised under the pleadings filed.

*Question No. 1*

Did the Integrity Trust Company as successor by merger to the West Philadelphia Title & Trust Company succeed as a matter of law to the full rights and powers vested by the testator in the trustee named by him, or was it necessary for the new corporation thus formed by merger of the old to first make application and be appointed as the substituted trustee?

We think the learned master was correct in ruling that the merging of the West Philadelphia Title & Trust Company into the Integrity Trust Company operated to carry with it and vest in the successor trust company all of the powers and duties which the constituent company formerly had, with the same force and effect as though it had been appointed substituted trustee. Ample authority for this ruling is to be found in the Act of May 9, 1923, P. L. 174, which provides:

"That whenever a trust company . . . incorporated

under the provisions of any general or special law of this Commonwealth, shall merge or consolidate with another trust company . . . all the estate and property, real and personal, held by either of such merging corporations in any trust or fiduciary capacity shall be deemed and taken to be transferred to and vested in the consolidated corporation without any further act or deed or any order or decree of any court or other tribunal, and the consolidated corporation shall have and hold the same as fully as the same was possessed and held by the constituent corporations from which it was, by operation of the provisions of this act, transferred; and said consolidated corporation shall succeed to all the relations, obligations, and liabilities, and shall execute and perform all the trusts and duties devolving upon it in the same manner as though it had itself assumed the relation or trust: Provided; That if within thirty days after notice to any person or corporation interested in any such trust of the said consolidation and merger, such a person or corporation shall file a written objection with said consolidated corporation, and shall apply to the proper court, or other tribunal having jurisdiction of such trust estate, for the appointment of a substituted trustee or other fiduciary, such court or tribunal shall have power to make the appointment of a substituted trustee or other fiduciary, and to order said consolidated corporation forthwith to file an account of such trust estate and to pay over and transfer the assets and property thereof to the substituted trustee or fiduciary so appointed."

Unless, therefore, objections are made by the parties in interest to the succession of the consolidated corporation to the rights, powers, and duties, with respect to the trust assets of the constituent corporations forming it, the consolidated corporation must be regarded in the same position as a substituted trustee appointed by decree of this court. It is well settled that the discretionary power vested in a testamentary trustee virtute officio survives to a substituted trustee, and this is the general

rule relating to a fiduciary: Putnam's Estate, 5 D. & C. 709, by Gest, J. Not only did the parties interested in the estate not object but the master found they expressly agreed and approved of the Integrity Trust Company acting as executor and trustee by virtue of the merger. It remains to be said, as pointed out by the master, that his interpretation of the Act of 1923, supra, and the act that replaced it, namely, the Act of April 26, 1929, P. L. 839, is the same as that of Deputy Attorney General Saylor who ruled upon this specific question in Powers of Merged Trust Companies & Banks, 13 D. & C. 396.

### Question No. 2

Was distribution of the mortgages agreed to by petitioner and was the direction of the court in regard to the preparation of the schedule of distribution properly complied with?

This is a mixed question of law and fact. The fact for decision is whether Frank G. Hays, petitioner, ever agreed with the executors and trustees to the distribution to him in kind of the specific mortgage securities of which the testator died possessed allocated by the schedule to the Frank G. Hays trust.

There is no dispute that before the schedule of distribution was approved by the auditing judge, an agreement, dated May 29, 1929 (which is annexed to the adjudication), was signed by all parties then interested in the estate, including Frank G. Hays, petitioner. Petitioner, however, pleaded in effect that because of his limited education he did not understand the purport of the document and signed it without understanding it largely because he was importuned to do so by Mr. Harrison, the vice president and trust officer of the Integrity Trust Company in whom he had implicit confidence. The learned master discussed at some length the testimony by which petitioner sought to set the written agreement aside, and the conclusion of the master is to the effect that "petitioner has not overcome the clear presumption of the written

approval of the allotment of mortgages by his testimony as to the circumstances preceding and surrounding the signing of this approval, in face of the testimony produced by respondents." Further, the master stamped as improbable the statements of petitioner that he did not know what he was signing, that he signed his approval in his blind faith in Mr. Harrison, and that he had no knowledge as to the contents of the written approval.

The earnest argument and able brief of petitioner's learned counsel has failed to convince us that the master erred in his conclusion that Frank G. Hays, petitioner, must be held bound by his written approval. There was no fraud, overreaching, or misrepresentation, and the long delay in raising objection (nearly five years) would indicate that he was well satisfied with his allotment of mortgages until by reason of the great depression which began in the fall of 1929, they in keeping with the general decline of real estate values elsewhere greatly depreciated.

There remains the question of law, viz., the proper interpretation of the following language of the auditing judge:

"Counsel will prepare a schedule of distribution, in duplicate, and certify to its correctness and conformity to this adjudication, which will be agreed to by the parties or their counsel and when approved and hereto annexed, will form part hereof."

It is petitioner's contention that the direction of the court as just quoted required that petitioner should have signed the schedule of distribution, or his written approval thereto should have been physically attached to the schedule of distribution, or the adjudication. The master correctly held that this contention is based on a misconception of the meaning of the language of the court. The court directed that the schedule of distribution should be annexed to the adjudication and not the approval of the allotment of mortgages. Petitioner also contended that he never in fact approved the schedule of distribution.

Even if this is so the direction of court is in the alternative, that either the parties or their counsel shall agree to the schedule of distribution; and this counsel did. Moreover, the master specifically found on adequate evidence that petitioner did in fact sign exhibit H-2, which is the agreement of May 29, 1929, and which contains the intended allotment of mortgages to his trust. This allotment coincides with that of the schedule of distribution; the master concluded that this was tantamount to an approval of the schedule of distribution; and with this we agree. We, therefore, dismiss all of the exceptions which raise question no. 2 as to the compliance with the direction of the auditing judge and approval of the allotment of mortgages to the Frank G. Hays trust.

### Question No. 3

[Effect of master's finding the mortgages allocated to the trust were less than face value.]

The exceptions relating to this finding raise the following question:

It being shown to the satisfaction of the master that of 15 mortgages alloted to petitioner's trust at their face value of $169,965.41, five mortgages or half portions thereof with a face value of $110,500 were worth substantially less than their face value, is petitioner entitled to relief by a reallotment of these mortgages?

The master took considerable evidence as to the value of the mortgages allotted to the Frank G. Hays trust as of the time of the signing of the schedule of distribution. The master properly pointed out that testimony of real estate experts who undertake to fix the value of real estate as of a time some eight or nine years previous is at best unsatisfactory. Without therefore specifically fixing the value of these mortgages as of the time of their allotment to the Frank G. Hays trust, the master finds that at least five of the mortgages, of a face value of $110,500, were worth substantially less than their face value. After making this finding the master held in effect that though the 20th and 22d clauses of the will

authorize the executors "to distribute real estate and securities constituting the principal of testator's estate according to their sole discretion," this language merely gives authority to allot to a trust securities in kind, but it gives no power to allot securities at a value greater than their actual value. We agree that the power invoked does not authorize fiduciaries as a general proposition to distribute or accept securities in kind at less than their actual value. There was, however, a sharp dispute between the experts of the fiduciaries on one side and Frank G. Hays, the petitioner, on the other side, as to whether mortgages alloted to him and accepted by him were of the face value or substantially less. The master, who heard the witnesses and carefully reviewed their testimony, has come to the conclusion that the mortgages were worth substantially less. We do not find it necessary to reëxamine his fact findings in this regard, because of the view we take of the master's conclusion of law. His conclusion is that notwithstanding petitioner's agreement to take the named securities in kind, nevertheless this could not relieve the fiduciaries from the duty of seeing to it that the securities set aside for petitioner's trust were of the actual value of $200,000, and since the fiduciaries still hold the rest of the securities which were alloted to them as trustees under the residuary trust a review should be granted, limited to a reëxamination of the question as to the actual value of the mortgages allotted to the Frank G. Hays trust and redistribution made accordingly.

To the objection of the guardian ad litem and those counsel who represent the residuary trust to the effect that petitioner is not entitled to this relief because he had specifically in writing approved the allotment of mortgages, the master argues that petitioner's approval of the acceptance of the mortgages without joinder of his wife, who had a contingent interest in this trust, must be regarded as ineffective or at least not binding. The learned master cites Brooke's Estate, 321 Pa. 529, as

holding that an agreement by a life beneficiary that certain bonds and mortgages should be distributed at their face value at par into his trust, did not relieve the trustees from insisting on an appraisement to fix the actual value thereof. We have carefully examined Brooke's Estate, supra, and find an important distinction between it and the case before us, in that there the petition for surcharge was filed not by the life tenant who had agreed to the distribution as made, but by the remainderman whose rights did not accrue until the life tenant's death. Here we have the converse: The life tenant who made the agreement seeks to avoid it, while neither the wife of Frank G. Hays, who the master states has a contingent interest, nor any remainderman is asking any relief. The question here is whether the court will grant a review on the petition of the life tenant to set aside an allocation of securities to which he expressly agreed, and does not move for relief until 11 days short of the expiration of the five years from the date of the schedule of distribution.

An examination of the will possibly explains why neither the wife of petitioner nor those in remainder have either moved on their own behalf for a redistribution or joined in the life tenant's petition. Clause seven of the will provides that after petitioner's death the principal sum of $200,000 of his trust shall be added to that part of testator's residuary estate which is given in trust for his son, Walter, and daughter, Hazel, under the same trusts for the same estates and remainders as are provided for their own original shares. Clause 10 of the will which devises the residue gives the residue to the trustees named to divide in three equal parts and to pay the income on one such part to Walter B. Hays during life and at death to Carrie Hays, his wife, and at her death to be continued as provided in clause 11. The income on another third part is payable to petitioner, Frank G. Hays, and at his death to Helen Hays, his wife, and at her death or remarriage to continue as provided

in clause 11. The remaining third part's income is payable to Hazel Hays Guyer, during her life and at her death to continue also as provided in clause 11. Clause 11 it may be said in brief makes disposition of the income and principal of these parts to the grandchildren of testator.

From this it is clear that a redistribution of securities to be taken out of the residue as recommended by the master would be at the expense of the depletion of the residue's income now shared by the three children of testator, including Frank G. Hays, petitioner. Thus as the principal of petitioner's $200,000 trust ultimately falls into the residue, the only possible person who could benefit by the redistribution of the securities would be Frank G. Hays, petitioner, whose present income would thereby be increased.

Since Frank G. Hays agreed in writing to the original distribution, which agreement the master specifically found was not obtained by either misrepresentation or fraud but was his voluntary act, petitioner must be regarded—if not estopped—as at least bound by its terms. Moreover, he has been sadly neglectful in failing to move promptly and guilty of laches which alone would warrant a court of equity refusing the relief prayed for.

We are of the opinion that the case thus presented falls within the principle of law represented by the class of cases of which Devine's Estate, 295 Pa. 333, is a leading example, where it was held a bill of review will not be granted when the only question involved was disposed of by the orphans' court in accordance with an agreement voluntarily entered into by the respective parties, where there is no question of after-discovered evidence or one where justice and equity required further hearing or the presence of circumstances which indicated that petitioners had lost some right without fault on their part. And this is true, even if, as in the present case, the interest of petitioner as beneficiary is subject to spendthrift provisions: Cope's Estate, 328 Pa. 296.

In recognition of the right of parties sui juris to freely dispose of what is theirs, this court has and does frequently accept agreements of the parties by which disputable questions are settled or assets in kind distributed to expedite the closing of estates and accounts. Such settlements being in the nature of family settlements have been universally regarded as salutary. If, however, this court once permits such agreements to be opened and reviewed, even though there be no fraud or mistake, simply because one of the parties afterwards repents of the bargain he made, then this court might as well adopt as its settled practice the refusal of all such agreements. Such a practice would be appalling in its consequences and certainly not a wise public policy.

Moreover, we have here no satisfactory explanation of the long delay by petitioner in applying for relief. If the securities now claimed to have been of substantially less value than the face value at which they were accepted were in fact so at that time, surely petitioner should have known it long ago. He cannot be permitted to speculate on the possibility of a rising market and then because his expectation is not realized come in nearly five years thereafter and ask the court for relief. Nor can a court with much confidence fix values as of nine years ago upon testimony of expert witnesses who made an appraisement then and who must necessarily view values "through lenses ground from today's experience": Klein, J., in Chabrow's Estate, 22 D. & C. 481.

"With the best of intentions it is difficult if not well nigh impossible for an appraiser so appraising to prevent his judgment from being influenced by the course of the recent depression, thus substituting [as Judge Stearne said in re Trust of Bailey and Regar, 29 D. & C. 215] hindsight for foresight": Abbott's Estate. July term, 1909, no. 149.

The difficulty in fixing values upon such testimony is one with which a court must and will wrestle in order to reach a determination where innocent parties have

the right to invoke its processes, but not for tardy suitors who seek relief from their own errors of judgment.

For this reason we have concluded that the petition must be dismissed.

Before concluding this opinion we find it necessary to indicate the proper practice for masters reporting on exceptions. As the master here has merely followed what seems to have become a customary procedure no criticism is intended to be leveled specifically at him, for the criticism which we now make is directed at what seems to be a prevailing practice and is therefore intended for the general information of the profession.

The purpose of Rule 8 ($H$) of our Orphans' Court rules which requires exceptions to be filed with the master and makes it his duty "to reëxamine the subject and supplement his report . . . in whole or in part," is intended not only to enable corrections of inadvertent errors, but to lighten the labor of this court by giving the judges the benefit of the views of the master on each exception. Consequently, it is the duty of the master to consider the exceptions seriatim and briefly and concisely state to the court why he believes each particular exception considered is not well founded. If more than one exception relate to the same subject matter (a practice not to be commended), or relate to the same proposition of law, the master in such cases should group them together and may then answer them together.

In this case counsel for the trustees have filed 17 exceptions, the guardian ad litem 12, and the petitioner 14. The whole 43 exceptions were disposed of by a general statement to the effect that after a careful consideration "the master is of opinion that the exceptions are not well founded in whole or part and recommends their dismissal." To lump 43 exceptions by three different counsel and dispose of them in such manner does not give this court the assistance which the rule intends and reduces the requirement of filing exceptions with the master to a mere formality.

Had the master reported on them separately and given us briefly the reason why he felt each exception was not well-founded, the court would have been spared much unnecessary labor by enabling the reviewing judges to pick out at a glance which of the exceptions are mere duplications, which involve the same question and which merit careful consideration.

For the reasons stated in this opinion we dispose of the exceptions filed as follows:

Petitioner's exceptions are all dismissed.

Of the exceptions filed by the trustees, exceptions nos. 1 to 9, inclusive, and no. 14 are dismissed.

Exceptions nos. 10, 11, 12, 13, 15, 16 and 17 are sustained.

Of the exceptions filed on behalf of Walter B. Hays and John W. Hallahan, the guardian ad litem, etc., exceptions nos. 1 to 9, inclusive, and no. 14 are dismissed.

Exceptions nos. 10, 11, 12, 13 and 15 are sustained.

In accordance with the foregoing opinion the petition for review is dismissed.