## Austin's Estate

*Eustace H. Bane,* for accountant.

*Higbee, Lewellyn & Higbee,* and *Chad L. John,* for exceptants.

MATTHEWS, P. J., January 7, 1942.— . . .

### 2. *Carter Ice Cream Company Mortgage*

The unpaid principal of this mortgage was $45,000 at the time it was acquired by the trust department. No instalment was overdue at that time. Funds of this trust amounting to $25,000, of the Elizabeth A. Shaw trust amounting to $10,000, and of the St. Peter's Episcopal Church Trust amounting to $10,000, all created under testator's will, were invested in this mortgage. Thereafter, during 1928, 1929, and 1930 the sum of $13,000 was paid on account of principal, all of which payments were applied in reduction of the participation of this trust. At insolvency interest had been paid to September 30, 1931.

The mortgagor is a corporation engaged in the manufacture and sale of ice cream. The mortgaged property consists of certain lots of land situate in the City of Uniontown, Fayette County, Pa., "together with all the machinery, equipment, trucks, cabinets, containers, ice machines and refrigerators of the Carter Ice Cream Company, or appurtenant to its plant". So far as the record shows, no appraisal of the property was made at or about the date of the mortgage or at the time the same was transferred to the trust department. Even though the investment was made prior to the Act of April 26, 1929, P. L. 817, the trustee could not properly lend more than a reasonable proportion of the value of the mortgaged premises. There was

an appraisement by American Appraisal Company on December 16, 1930, and after the consolidation of the banks, at the sum of $125,000, of which amount approximately $67,000 is the stated value of the real estate, but this appraisal was made at the instance of the mortgagor for fire insurance purposes. Such appraisals are usually at replacement values and not at fair market values. Then, too, there is no evidence as to the qualifications of the appraiser and, objection to the offer of the written appraisal having been made, the objection should have been sustained and such appraisal excluded.

The appraisement of witnesses as presented by the receiver shows the property to have been of the fair market value of $47,500. This sum includes the land at $2,500, buildings at $12,000, machinery and equipment at $20,200, trucks at $2,800 and ice cream cabinets at $10,000. Exceptants' witnesses appraise the land at $2,100, buildings at $6,000 and machinery at $14,000, or a total of $22,100.

While machinery and equipment placed in an industrial establishment for permanent use and necessary to the operation of the plant become fixtures and a part of real estate (Commonwealth Trust Company of Pittsburgh v. Harkins et al., 312 Pa. 402), yet we cannot approve such property as security for trust funds where, as here, such a large proportion of the value is in such machinery and equipment. The right of the mortgagee to maintain a lien on automobile trucks and on ice cream cabinets in the possession of customers scattered over the entire trade area is questionable, to say the least. It is a well-known fact that all machinery and equipment depreciates much more rapidly than buildings. It wears out and must be replaced. It is hazardous to invest trust funds on the security of such property. Too much depends on the success of the business enterprise rather than on the inherent value of the real estate. Under all of the facts

submitted, including, of course, the fact that the mortgage was purchased from the commercial department of the bank, we are of the opinion that the investment was imprudent. We also believe that, from all the evidence submitted, the sum of $22,100 represents the fair market value of the property as of the date of insolvency and we so find. The beneficiaries of the trust desire to retain the participation, and therefore, the apparent loss on the whole mortgage is the difference between $32,000 and $22,100 or $9,900. This trust is entitled to 12/32nds of the loss or $3,712.50, with which amount the bank should be surcharged: Brooke's Estate, 321 Pa. 529. No taxes were delinquent at insolvency, and, in this instance, no further surcharge will be made as to costs of foreclosure.

.    .    .    .    .    .    .    .    .    .

### 5. *Laura R. King Mortgage*

This property was appraised by E. A. Hibbs on November 25, 1924, at the sum of $12,000. The appraisement was made more than a month prior to the date of the mortgage, but it was sufficiently current to justify a loan on the strength of it. On the basis of this appraisal, the security was ample. On July 29, 1929, and after the indebtedness became due, J. H. Lynn appraised the property at $7,500 and made notation on the appraisal "ask for reduction".

The commercial department held a judgment against the mortgaged property entered December 16, 1929, at no. 147, December term, 1929, for the sum of $4,336.93, with interest from December 13, 1929, the lien of which judgment was junior to the lien of the mortgage. On August 7, 1931, writ of execution was issued by the bank at no. 153, June term, 1931, E. D., and placed in the hands of the sheriff, in virtue of which writ the real estate described in the mortgage was sold on September 22, 1931, to The National Bank of Fayette County for the sum of $74.25, being the

sheriff's costs. This sale did not divest the lien of the mortgage and the property remained subject thereto. In due time the sale was confirmed and a deed was executed and delivered to the bank. It is not in dispute that the bank acquired the property as an asset of the commercial department, and not as fiduciary for the 19 trust estates holding participations in this mortgage. The bank paid from its commercial department $460.01, which amount included costs of the sheriff's sale and taxes. The property had been sold by the county treasurer for delinquent taxes and it was necessary to redeem the same.

It will be observed that, shortly after this property was acquired at sheriff's sale, the Comptroller of the Currency took possession of the bank. The account filed by the receiver at no. 1669 in equity shows that certain rental was received for the period extending from May 12, 1933, to December 25, 1939, and that the receiver has a balance in his hands of $1,267.34. The receiver proposes to amend this account by claiming an additional credit for the sum of $460.01, the costs and taxes paid by the commercial department, and then to relinquish any equity the bank, as such, may have in the property.

When the bank sold the property at sheriff's sale, it was its duty to decide whether there was any equity in it for the liquidation of its judgment lien. The bank did decide that there was an equity. It proceeded on its judgment and not on the trust department mortgage. It paid the costs and taxes and purchased the property for the commercial department. Thereupon, it became the duty of the bank to pay the underlying mortgage. A trustee cannot hold in one hand a mortgage for the benefit of his trust, and in the other hand the legal title to the mortgage property for the benefit of himself. This is definitely self-dealing. He may desire to retain the property for an advantageous sale for his personal benefit, yet it may be his duty to the

trust to sell it. Certainly, when he does retain it under such circumstances and a loss to the trust occurs, he should be chargeable with it.

The receiver's witnesses fixed the value of the property at $4,400, and those of exceptants at $3,125. We find nothing in the record to corroborate either figure or to indicate which amount more nearly represents the actual fair value. Therefore, we will take the mean of these amounts or $3,762.50.

Accrued interest on this mortgage to insolvency is $634, making a total amount due at that time of $6,634. The apparent loss is, therefore, $2,871.50, of which amount this trust is entitled to receive 655/60,000ths or $313.47. Since the bank has legal title to the property, the costs of another sheriff's sale may be avoided by the execution and delivery of a deed to the trustee. We have no doubt but that a court of competent jurisdiction would approve the conveyance under the circumstances. Therefore, we will not include the costs of a sheriff's sale in the surcharge. . . .

### 17. *Louis J. Riley Mortgage*

The mortgaged property consists of lot no. 11 in the Redstone Plan in North Union Township, upon which is erected a dwelling house. At the time the loan was made E. A. Hibbs appraised the lot at $500 and the dwelling at $4,000. The dwelling house was not then completed, but as we understand it no question is raised on that account, it having been completed later. The mortgage was recorded on the day of its date, and on the following day attorneys-at-law delivered to the bank a certificate stating the date and place of record of the mortgage and reciting further, "We hereby certify that we have examined the title of the premises described in the above-mentioned mortgage for a period covering the last past twenty-one years or more, and that the said title as shown by the general indices to the public records in the proper offices

in this county for said period is good and free from incumbrance, except above mortgage."

On February 23, 1922, Emily B. Cornish and Robert H. Cornish, her husband, made, executed, and delivered to Abraham D. Newcomer a mortgage on lot no. 73 in Miller Terrace Plan of Lots, upon which was erected a two-story dwelling house, and on lots nos. 1, 2, 3, 4, 5, 9, 11, and 22 in Redstone Plan, to secure the payment of $5,000 in one year from date, with interest at 6 percent per annum. This mortgage was recorded on the day of its date. Lot no. 4 was released from the lien of the mortgage on October 25, 1922, lot no. 3 on February 5, 1923, and lots nos. 5 and 22 on March 21, 1923. By deed dated February 10, 1925, and recorded February 11, 1925, Emily B. Cornish and husband conveyed lot no. 11 only to Louis J. Riley, but the deed makes no reference to the mortgage. The sum of $1,000 on the principal and all interest to July 14, 1925, was paid on the mortgage, whereupon the balance of $4,000 was assigned to the Fayette Title & Trust Company. By deed dated February 1, 1926, and recorded on the same day, Louis J. Riley and wife conveyed lot no. 11 to James Ronald Frankenberry and Margaret Frankenberry, his wife, and by deed dated July 8, 1926, and recorded August 5, 1926, the same lot of land was reconveyed to Louis J. Riley. Neither of these deeds makes any reference to the Cornish mortgage.

It thus appears that this mortgage remains a lien on the house and lot in Miller Terrace and on lots nos. 1, 2, 9, and 11 in the Redstone Plan. We have no evidence as to whether Cornish and wife have conveyed any of these lots except lot no. 11. It may be that there are improvements on some of them. There is no evidence on that point. Neither is there any evidence showing the present balance owing on this mortgage. If payment of this indebtedness can be enforced from the other property, excluding lot no. 11, it will

be seen that the Riley mortgage would then become a first lien on that lot, and there might be no loss whatever, or the loss might be reduced.

In our view of the matter, the details as to the Cornish mortgage are immaterial in this proceeding. There was no violation of duty by the bank. The Riley mortgage was acquired by the trust department on November 1, 1926, at which time $1,000 of the funds of this trust were invested in it. Interest was paid fairly regularly at semi-annual periods. At insolvency of the bank interest had been paid to March 31, 1931, and the next semi-annual payment was not made until December 2, 1931. Payments of interest were made thereafter to the receiver until March 31, 1939.

The fact that it now turns out that the Riley mortgage was not a first lien does not convict the bank of violation of duty. The officers of the bank were justified in believing that it was a first lien. They had a certificate of reputable attorneys so stating. A trustee is under a duty to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property, but no greater care is required. He has a right to rely upon the certificate of counsel as to prior liens: A. L. I. Restatement of Trusts, §201, com. (b) ; Bradley's Appeal, 89 Pa. 514. The facts do not warrant any surcharge as to this mortgage. . . .

Accountant has taken credit for $1,511.71 commission on income received since the date of insolvency of the bank. We understand that this amount does not include any commission which was earned and paid to the commercial department during the time it was a going concern. This commission should be credited against the indebtedness of the bank.

"Where the trustee commits a breach of trust which causes a loss to the trust estate, even though the trustee may be entitled to compensation, his claim for compensation can be set off against his liability for the loss, and he is not entitled to full compensation without mak-

ing good the loss": A. L. I. Restatement of Trusts, §243, com. (b) ; McCalla's Estate, 33 D. & C. 643, 660; Kerr's Estate, 41 D. & C. 209, 212.