## Goslin, Admr., *v.* Edmunds, Appellant.

Argued November 30, 1936.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Lemuel B. Schofield,* with him *W. Bradley Ward,* for appellant.

*George F. Douglas,* with him *John J. Cahill,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, January 11, 1937:

The chancellor entered a decree adjudging the defendant, Marie A. Edmunds, trustee of the sum of $2,678.67 for Annie H. Young and directing her to pay it to the complainant. From the decree we have this appeal by defendant.

The sum named was the amount of a check drawn by John J. Cahill, Esq., to the order of John Huffnagle in payment of a mortgage which the latter held. The check was endorsed by Huffnagle to Annie H. Young, was endorsed by her generally and delivered to the defendant, Marie A. Edmunds, and endorsed by her as attorney. She deposited the check in her attorney account and the money which it called for was placed to her credit therein. She had opened this attorney account a considerable time before depositing the check. Huffnagle and Annie H. Young, brother and sister, both past eighty years of age, lived together. He was a paralytic, un-

able to talk except to say "yes" and "no." Mrs. Young took care of him.

The bill in equity recited that the complainant was the administrator of Annie H. Young, deceased, that the defendant, Marie A. Edmunds, had caused the deceased to execute a letter of attorney to her and thereby she had obtained control and possession of money and securities belonging to the deceased amounting to a total of $17,000 "as complainant is credibly informed." The bill prayed that "an account be stated by the defendant of . . . the transactions and dealings between the decedent Annie H. Young and the defendant." A detailed account of the money and securities received and the disposition thereof was filed by defendant. No objection was made to this account. The bill went on to aver that the defendant on September 16, 1933, obtained from Annie H. Young the check heretofore mentioned "for a first mortgage to be placed upon the defendant's residence, but said mortgage was never executed and delivered nor was the said sum of money returned to the said Annie H. Young." (On the trial no proof was offered to substantiate the allegation of an agreement to give the mortgage.) The prayer was "that the defendant be declared to hold the sum of $2,678.67 obtained from decedent . . . *which belonged to decedent Annie H. Young* [italics supplied] . . . as trustee for complainant" her administrator. There was no charge of fraud in the pleadings or of undue influence on the part of defendant and no proof of either.

The answer set up that defendant and Annie H. Young had been close friends for many years preceding the death of the latter. The receipt of the check was admitted but it was denied that it was delivered to defendant in consideration of a mortgage which she was to execute, on the contrary, the answer averred that Annie H. Young had made a gift to the defendant of $2,000 out of the proceeds of the check and that she, the defendant, after depositing the check had paid to Annie H. Young

in cash the sum of $678.67, the difference between the amount of the check and the $2,000 gift.

It will thus be seen that the allegation of the bill was that the money represented by the check belonged to Annie H. Young and the prayer was that the defendant be declared to hold the money "which belonged to decedent Annie H. Young" as trustee for her administrator. The allegations of the bill were lost sight of and disregarded at the trial. During its progress, proof was introduced by the plaintiff, to show that the money belonged, not to Annie H. Young, but to Huffnagle. This was done without amendment of the parties or of the allegations of the bill.

Plaintiff's case was attempted to be made out by placing the check with its endorsements in evidence and by proof that it had been deposited in defendant's attorney account and that she had received the money, and by the testimony of Mr. Cahill, who was called as a witness in plaintiff's behalf, and stated that the money which the check represented came into his hands as Huffnagle's attorney, in payment of a mortgage owing to him and that he had drawn the check to the latter in settlement for the money he had received. Over objection he was then permitted to testify as to Huffnagle's physical condition and as to what occurred when he (Cahill) gave Huffnagle the check, the defendant not being present. He said that although Huffnagle could only utter the two words "yes" and "no" he fully understood what others said. The witness recounted that he handed the check to Huffnagle and explained that it was in payment of his mortgage, that Mrs. Young was present and said she attended to her brother's affairs, and that he wanted her to take care of the check as he could not go to bank. She then asked him (Cahill) if he would fix the check so that she could deposit it. As he handed the check to Huffnagle, Mrs. Young, speaking to the latter, said that she would look after it for him. The witness further stated that he then endorsed the check pay-

able to Annie H. Young, wrote Huffnagle's name on the back of the check and had him make his mark and he, Cahill, witnessed it. He asked Huffnagle if he would allow Mrs. Young to hold the check and receiving his tacit consent, he handed it to her. The check was delivered, on the next day, by Mrs. Young to the defendant in the presence of Huffnagle. What was then said the chancellor refused to hear, deeming defendant's mouth closed by the death of Mrs. Young. The testimony as to conversations between the witness, Mrs. Young, and Huffnagle should not have been admitted.

The chancellor admitted the evidence on a theory which is somewhat novel; that while "the suit was originally brought by the administrator of Annie H. Young, prior to hearing, it was marked to the use of Huffnagle's executor." He treated this "as tantamount to an amendment of the pleadings to the effect that the claim of Annie H. Young was made in behalf of or as trustee for John Huffnagle. Consequently we find no error in the admission of the testimony of John J. Cahill, the drawer of the check, that it was in payment of a mortgage held by John Huffnagle and that in his presence Annie H. Young took the check 'to look after it' for Huffnagle. Such declaration by Annie H. Young was against her interest and admissible whether made in the presence of the defendant or not."

The chancellor was not trying an issue between Huffnagle's Estate and the Estate of Annie H. Young, he was trying one between the Estate of Annie H. Young and the defendant. The loose way in which the court treated the pleadings, the issue and the parties cannot be permitted to prevail. Suits on the equity side of the court must pursue the same regular course as other litigation; issues must be tried as made by the pleadings, they cannot be changed except by amendment, nor can parties be changed except in that regular way. Testimony on plaintiff's behalf to be competent must be in furtherance of the allegations of the bill or be given to

meet the answer. A defendant cannot be haléd into equity to meet a claim of one person and there be compelled to face that of another unless the new party is first duly introduced on the record and the pleadings changed. In *National Bank v. Lake Erie Asphalt Block Co.*, 233 Pa. 421, 428, 82 A. 773, we said: "When the defendant is brought into court to answer a claim made against him, he is entitled to know the plaintiff's cause of action that he may be prepared to meet it. The purpose of pleading is to form a clear and distinct issue for the trial of the cause between the parties. The statement should be sufficiently explicit to enable the defendant to prepare his defense. A plaintiff cannot file a statement which avers one cause of action, and be permitted, on the trial, to prove a different cause of action. He must state the claim on which he will rely to recover so clearly and concisely that the defendant may be fully advised as to what he is called upon to meet." The relief afforded by a decree in equity must conform to the case as made out by the pleadings as well as to the proofs. Every fact essential to entitle the plaintiff to the relief which he seeks must be averred in his bill. Neither unproved allegations nor proof of matters not alleged can be made a basis for equitable relief. If there is nothing in the testimony to sustain the bill as filed, it must be dismissed: *Spangler Brewing Co. v. Mc-Henry*, 242 Pa. 522, 89 A. 665; *Bowman v. Gum, Inc.*, 321 Pa. 516, 184 A. 258.

In *Wildermuth v. Long*, 196 Pa. 541, 46 A. 927, an administrator d. b. n. sued the estate of his predecessor to recover the amount of the purchase price of real estate owned by the decedent at the time of his death and conveyed to another by the predecessor before he was appointed administrator. The conveyance was a nullity, since the original administrator had not been appointed at the time it was made and the real estate had descended to the decedent's heirs at law. The plaintiff asked to amend the record and pleadings by substituting

160

as plaintiffs the heirs at law. We said (p. 544) : "This amendment was refused, on the ground that the cause of action would be changed. This view of the court was correct. The original cause of action was for money alleged to be due to the personal representative of Elijah Wildermuth, who claimed to be entitled to receive the same in his representative capacity, for the purpose of distribution. The proposed amendment would have changed the cause of action to one by the heirs at law of Wildermuth, claiming that their land had been sold away from them and that they sought to recover the proceeds of it from the estate of the man who had sold it. This was clearly a change of the cause of action. The right of amendment may be liberally allowed, but not to such an extent as to substantially change the cause of action." In *Hodges v. McGovern,* 43 Pa. Superior Ct. 566, affirmed by us on the opinion of the Superior Court in 230 Pa. 368, 79 A. 636, the plaintiff sued an alderman and constable in their official capacities for false arrest. At the trial an amendment was permitted which alleged that the defendants conspired falsely to arrest the plaintiff under color of their offices rather than by virtue of their offices. Reversing the judgment, the Superior Court said (p. 571) : "While the statutes of amendments are to be construed liberally so as to give effect to their clearly defined intent, and to prevent the defeat of justice through mere mistake, they will not be allowed to the prejudice of parties, by introducing a new cause of action or bringing in a new party, or changing the capacity in which he is sued. . . . The amendment allowed in this case was not a mere change of form but an entire change in the cause of action. . . . The true criterion is whether the alteration or proposed amendment is a new or different matter, another cause of controversy; or whether it is the same contract or injury, and a mere permission to lay it in a manner which the plaintiff considers will best correspond with his proof and the merits of his case.

. . . The change in the form of this action being substantial, and depriving the defendant of a valid defense as the record stood before the amendment was allowed, it was error to permit it to be made." There can be no, question but that what has been here introduced is a new cause of action. If the chancellor could not permit an amendment, it is clear that he cannot treat the proceeding as amended.

With the testimony of Mr. Cahill rejected, the court's eighth finding of fact that Huffnagle "was unable to attend to any business matters" cannot be sustained nor can his thirteenth finding that the check was delivered to Annie H. Young "so that she might deposit the same and hold the proceeds on behalf of the said John Huffnagle." No basis was left in the testimony for the court's fourteenth finding that Annie H. Young was to hold the proceeds of the check for Huffnagle and that she had no other claim or right of title to the same. There is nothing in the receivable testimony to warrant the further finding that the proceeds of the check belonged exclusively to Huffnagle.

With these findings out of the way, there is nothing left in the plaintiff's case except the check. It shows an unqualified negotiation from Huffnagle to Annie. H. Young and from Annie H. Young to defendant. There was a presumption of a gift arising from endorsement and delivery of the check: *McConville v. Ingham,* 268 Pa. 507, 112 A. 85; *Campbell's Est.,* 274 Pa. 546, 118 A. 547; *Yeager's Est.,* 273 Pa. 359, 117 A. 67. "Such a transaction is naturally considered a gift": *Petty's Est. (No. 2),* 311 Pa. 372, 373, 166 A. 861. In *Campbell's Est.,* we said (p. 552): "The endorsement of a check absolute in form is sufficient to give rise to a transaction of a gift of the check. A stronger presumption arises from the drawing of a check to the order of one who sets up a gift of it."

As pointed out by appellant's counsel, if the appellee under the facts in this case is entitled to the relief

162

prayed for, any executor or administrator may search through his decedent's records, discover checks without explanatory words thereon and without explanation aliunde, drawn in favor of, and paid to others, months, and even years before his death, and have a recovery for the amounts of the checks from the payees, whose lips are sealed by the Act of 1887 (May 23, 1887, P. L. 158, sec. 5, 28 P.S. sec. 322).

No intendment against the defendant is to be taken from the fact that she deposited the check in her attorney account. Accounts so designated are of such common usage that they signify nothing.

No strictly legal proof was or perhaps could be submitted by defendant as to the $678.67, which she admits was not received by her as a gift and which in her answer she claims to have paid back to Mrs. Young. The only piece of evidence brought forward by her was a check to her own order for $650, dated three days after she received the check from Mrs. Young. This does not establish payment to Mrs. Young. There was an offer of proof by her that she paid the difference, $28.67, in cash to Mrs. Young. The court properly refused to receive her testimony.

In the supplemental brief filed by the appellant, it is argued that the responsive answer rule applies to this case, that the defendant having filed a responsive answer it must be accepted as true unless overcome by the testimony of two witnesses or the testimony of one witness and supporting circumstances. This overlooks the fact that the responsive answer rule was abolished by the Act of May 28, 1913, P. L. 358, sec. 1, 12 P.S. sec. 1222.

The decree is modified with directions to enter a decree in accordance with this opinion. Costs to be divided between the parties.