Powers, to use, *v.* Slattery et al., Appellants, et al.

Argued December 6, 1938. Before MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Rutledge Slattery,* with him *Frank P. Slattery,* for appellants.

*John P. Connelly,* with him *Vincent Moranz,* for appellee.

OPINION BY MR. JUSTICE STERN, January 26, 1939:

This appeal is by defendants from a decree entered in equity proceedings following the filing of a bill for an accounting. In view of the fact that the pleadings alone consist of approximately 300 pages, and the record of nearly 1,200, it is fortunate that it is not necessary, in order to dispose of the questions involved in the litiga-

tion, to recite a history of the complicated business transactions entered into by plaintiff and defendant.[1] These parties, now unhappily estranged from one another, were apparently close friends during the period in which they conducted the ventures which gave rise to their present differences. Both of them are members of the bar, and—as is said to be characteristic of lawyers—they sometimes failed to handle their own transactions with the same care they undoubtedly would have bestowed upon those of clients. Several of the issues between them were disposed of during the course of the proceedings by defendant's performance of obligations claimed by plaintiff, and others by defendant's compliance with some of the orders contained in the chancellor's decree nisi. There remain for present determination a number of complaints by defendant as to alleged procedural errors, as well as claims of error regarding certain specific items for which defendant was ordered to account.

Taking up first the procedural questions, defendant objects to an amendment to plaintiff's bill which was allowed, and indeed even suggested, by the chancellor. The bill as originally filed alleged an oral partnership for the purchase, ownership and operation of a brewery. Second and third amended bills were filed, the changes being in comparatively unimportant respects. Defendants filed answers to the third bill, and hearings were then had, during the course of which it developed that the relations between the parties had been modified by written agreements. After the conclusion of the hearings, plaintiff filed a fourth amended bill which was stricken off. Then a fifth bill was filed, and it is to this one that defendant objects. Equity Rule 56 permits the amendment of a pleading by leave of the court upon

---

[1] By "plaintiff" herein is meant Martin J. Powers, and by "defendant" Joseph A. Slattery. The other defendant, Philadelphia Brewing Company, is not substantially concerned in the litigation.

cause shown, the only limitation being that the amendment must not substantially change the cause of action: *Goslin v. Edmunds*, 325 Pa. 154, 160. Here no such change was made. What the bill in its final form did was to state the transactions between the parties somewhat more in detail, and to add the written agreements as exhibits. Plaintiff and defendant had originally proceeded on the basis of oral understandings; the subsequent writings were designed to adjust some phases of their mutual affairs. These written contracts had been attached to defendant's answer and were introduced in evidence by plaintiff without objection. No question of surprise or of the statute of limitations was involved. Neither was the accounting affected in any way by the question whether the relationship between the parties was that of a partnership or some other form of joint enterprise. The court therefore committed no error in allowing the bill to be amended so as to bring it into conformity with the undisputed testimony.

The chancellor, instead of decreeing merely that defendant account, heard testimony as to the various items involved and found the amount due by defendant to plaintiff. With this procedure defendant finds fault, pointing out that according to the usual practice the court first decrees that plaintiff is entitled to an account; then defendant states the account; if exceptions be taken thereto they are referred to an auditor, or the court itself may hear the testimony and determine the controversial issues. In the present case defendant attached an account to his answer to the bill as finally amended, and if the chancellor, having the account before him and the evidence bearing upon it, undertook to pursue the controversy through to the end, there is no reason why defendant should complain. The hearings lasted for a considerable period of time, and defendant utilized the opportunity thereby afforded to present all the testimony on his behalf regarding the items in dispute.

The written agreements between the parties provided that plaintiff was to "have the privilege of having George K. Watson, or any other certified public accountant of the State of Pennsylvania who shall be acceptable to the said Slattery, examine the books of the Company for the purpose of determining the accuracy of the figures hereinbefore referred to as owing by the Company to Slattery and by Slattery to Powers . . ." Defendant contends that plaintiff was obliged to exercise this privilege before seeking an accounting by judicial compulsion. This clause, however, did not impose any duty upon plaintiff; it merely conferred upon him a right of which he was not obliged to avail himself. During the course of the hearings defendant himself offered to allow plaintiff to have an examination and audit of the books referred to, and such examination was thereupon made by a certified public accountant who testified at length as to his findings.

Passing to defendant's objections to the rulings of the court in regard to certain items in the accounting, the first relates to a sum of $7,500 which defendant claimed as a fee for services in obtaining a loan for plaintiff's benefit. This claim was properly disallowed. There is no evidence of any agreement, express or implied, whereby defendant was to be paid for such services; presumably they were rendered for the benefit of both parties in the financing of their common ventures.

One of the judgment creditors of plaintiff issued an attachment execution naming defendant as garnishee. Defendant purchased the judgment and, in the accounting, claimed that he should be allowed to set it off to the extent of its face amount against his indebtedness to plaintiff, but the court allowed it only in the amount which he actually paid for it. This ruling was correct because the evidence indicates that defendant conducted the transaction, not on his own behalf, but as plaintiff's agent and for plaintiff's account. Defendant admitted this in his answer to the third amended bill, where he

averred that "defendant did advance to the said Bankers Trust Company *for plaintiff's account* the amount required to take over said judgment . . ." He also testified: "I made the payment *for the account of Mr. Powers.*" He cannot now claim that he acted at arm's length and purchased the judgment *on his own account* so as to constitute himself a creditor of plaintiff in the face amount of the judgment.

Among the items found to be due plaintiff was an indebtedness of Philadelphia Brewing Company arising from the delivery to that company by plaintiff of certain furniture and beer kegs. The record contains ample evidence of such delivery and of the fair value of the articles. It is not entirely clear whether the furniture was delivered to Philadelphia Brewing Company or to a previous company in which the parties had no proprietary interest, but the chancellor's finding on that point is conclusive.

One of defendant's complaints is that the court refused to allow him a credit for a payment of $1,236.66 interest alleged to have been made by him for plaintiff's account on a $25,000 note of plaintiff which defendant had guaranteed. Defendant produced no record or voucher to prove such payment, and the court's finding must be accepted as determinative of this claim.

The principal transaction conducted by the parties was their purchase of a brewing plant in 1927. The down money of $50,000 was advanced by plaintiff in order to enable defendant to close the agreement on their joint behalf. About two and a half years later the parties conveyed away the property. In his adjudication the chancellor charged defendant with interest on the $50,000 during this two-and-a-half year period. Defendant justly maintains that interest should have been charged against him only on half that sum, since the other half represented plaintiff's own investment and not a loan to defendant. The decree must therefore be amended by eliminating one half of the amount of this

interest item charged against defendant. A similar allowance must be made in regard to an item which arises from the fact that, the parties having borrowed a large sum of money to pay the balance due on the purchase price of the brewery, plaintiff subsequently made a payment of interest on this loan as well as taxes on the property for a year while the title was in the joint ownership of the parties. The chancellor allowed a credit to plaintiff for the full amount thus paid, although it is clear that half that sum was paid by him on his own behalf and only half was an advance for the benefit of defendant.

One of the controversies between the parties resulted from the issuance of a series of attachments by a creditor of plaintiff. Some of these were foreign attachments, others attachments sur judgment; in all of them defendant was named as garnishee. They gave rise to the question as to the liability of defendant for the payment of interest on his indebtedness to plaintiff while they were in force. The rule in Pennsylvania is that the running of interest on a garnishee's obligations to a defendant in attachment proceedings is suspended during the pendency of such proceedings on so much of the indebtedness as is covered by the sum claimed in. the attachment; this is true both as to attachments sur judgment and foreign attachments: *Sickman v. Lapsley,* 13 S. & R. 224; *Mackey v. Hodgson,* 9 Pa. 468; *Irwin v. Pittsburgh & Connellsville R. R. Co.,* 43 Pa. 488; *Allegheny Savings Bank v. Meyer,* 59 Pa. 361; *Barnes v. Bamberger,* 196 Pa. 123. If the attachment is a wrongful one, the defendant therein has his remedy against the plaintiff in the attachment and can thus recoup himself for the loss of interest he would otherwise have received from the garnishee. The only exception to the general rule is where there is fraud or collusion, or any unreasonable delay occasioned by the conduct of the garnishee himself: *Jackson's Executors v. Lloyd,* 44 Pa. 82; *Rushton v. Rowe,* 64 Pa. 63; *Jones v. Manufacturers'*

*National Bank,* 99 Pa. 317. In the present case the chancellor found that there was no fraud or collusion on the part of defendant as garnishee in the various attachment proceedings. The chancellor did criticize defendant for "failing to cause the attachments to come to trial on the interrogatories," but it is not ordinarily the duty of a garnishee to hasten the progress of such proceedings unless requested by his creditor to do so. Neither was there impressive evidence that defendant had refused or unduly neglected to account to plaintiff prior to the institution of the attachment proceedings or that he improperly took advantage of those proceedings for the purpose of procrastination. There were bona fide disputes as to some of the items of the account, and defendant was apparently willing to pay the admitted part of the indebtedness. Therefore the rule as to the suspension of interest was properly applicable, and the chancellor was correct in so holding.

As to one phase of the problem arising from the attachments, however, the court below, in our opinion, fell into error. It declared the foreign attachments null and void because, as the chancellor found from the evidence, plaintiff (defendant in the attachment proceedings) was a resident of Pennsylvania and therefore the attachments were wrongfully issued. It is true that a court is without jurisdiction to issue a foreign attachment unless the defendant be a nonresident *(Raymond v. Leishman,* 243 Pa. 64, 70; *Kohl v. Lyons,* 125 Pa. Superior Ct. 347, 350, 351), and that lack of jurisdiction can be taken advantage of collaterally, but in the case of the foreign attachments involved in the present case the question of jurisdiction depended upon the fact of plaintiff's residence, and defendant was not, as garnishee, obliged to determine that fact at his peril, even though he may have had some information upon the subject. Had he made payment to plaintiff notwithstanding the attachments, and had the attaching creditor of plaintiff been able to show that plaintiff was in fact a nonresident, defendant

would have been liable to pay the debt over again to the attaching creditor. Such a risk he was not obliged to take: *Mackey v. Hodgson,* supra. If these attachments should have been dissolved or nullified, it was for plaintiff to take action to that end, or at least to request defendant, as garnishee therein, to do so on his behalf. Instead of so proceeding, plaintiff finally agreed with the attaching creditor in the larger of the two foreign attachments that it should continue in force and effect, and it has not been dissolved or discontinued even to the present time. The decree of the court below must therefore be modified by eliminating as charges against defendant those items of interest which were improperly held as continuing to run notwithstanding this foreign attachment.[2]

Defendant complains as to two items of interest, one of $563.14 and the other of $341.73, which were charged against him in the decree as interest which accrued on bonds and was received by him after the time when he should have delivered such bonds to plaintiff in satisfaction of the indebtedness found due by him on the present accounting. These items do not represent interest which he is asked to pay out of his own funds, but accretions to the bonds now being delivered by him to plaintiff in pursuance of the decree. Defendant maintains that the bonds were only a medium of payment of his indebtedness to plaintiff,[3] but, whether so regarded or not, they were to be turned over in kind, and since

---

[2] The items of interest here referred to are three in number, stated in the record as being respectively $316.18, $1,476.61, and $1,455.16. The amounts of these items will necessarily be modified as the result of other corrections herein directed to be made in the account.

[3] It is significant that in answers to interrogatories in the attachment proceedings defendant seems to have taken a different view, for he stated: "I now have in my hands *the following property to which the defendant is entitled:* $85,000 of 6% Convertible First Mortgage Bonds of the Philadelphia Brewing Company

they can now be delivered free from the inhibition of attachments which prevented their earlier delivery they properly carry with them the increments accrued, by virtue of their interest coupons, during the time they were retained by defendant because of the then pending attachments. The same considerations apply to that portion of the decree which orders defendant to pay to plaintiff the sum of $8,355.67 in cash as representing further interest accruals on the bonds down to the last interest maturity prior to the date of the final decree. There was no error in the court's ruling on these items.

A charge was made against defendant of interest items aggregating $1,920.15 on delayed payments on the so-called salary account. This charge cannot be sustained, not only because one of the attachments sur judgment prevented the payment of most of the salary account for a part of the period in which it was withheld by defendant, but also because of the foreign attachment previously referred to, which, though issued before the salary indebtedness arose, was in force during the entire period for which this interest charge was made. If, when a foreign attachment is served, there is an indebtedness due by the garnishee to the defendant therein, the attachment binds all additional items of indebtedness arising up to the time of the trial on the interrogatories or the dissolution of the attachment: *Rankin v. Culver*, 303 Pa. 401, 404; *Rex v. Paramount Rubber Co.*, 110 Pa. Superior Ct. 536, 542, 543.

The account must be reconstructed in order to give effect to the corrections herein indicated and to make the modifications in interest charges necessitated thereby.

The bill should be dismissed as against Philadelphia Brewing Company, as the final decree does not impose any duty or make any order on that company.

The record is remitted to the court below with directions to modify the decree as herein indicated; costs to be divided equally between plaintiff and defendant.