**Myers v. Bushkill—Lower Lehigh
Joint Sewer Authority**

*J. Scott Maxwell, Martin Cohen*, for plaintiff.
*Charles S. Smith*, for defendant.

FREEDBERG, *J.*, July 8, 1982—This matter is before the court on a complaint in equity by Allan A. Myers, Inc. (hereinafter Myers), and Alberta George, against Bushkill Lower Lehigh Joint Sewer Authority (hereinafter authority). Plaintiff George

claims standing as a taxpayer to enjoin the improper expenditure of public funds by the authority. Plaintiff Myers asserts that under the Local Agency Law,[1] it was improperly denied the right to participate in a hearing before the authority, and so the action taken by the authority at that hearing should be enjoined.

These matters were tried, without a jury, before Freedberg, J., whereupon this decision is entered.

## FINDINGS OF FACT

1. Plaintiff George is resident of the Borough of Stockertown.

2. Plaintiff Myers is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, and is engaged in the construction business.

3. Plaintiff Myers is not a taxpayer of the area to be served by a certain sanitary sewer project to be constructed by the authority.

4. Defendant authority has been organized in accordance with the terms and provisions of the Municipality Authorities Act[2] to provide sanitary sewer service for the Northampton County townships of Plainfield, Palmer, Upper Nazareth, and Bushkill; and boroughs of Tatamy and Stockertown.

5. Defendant authority properly advertised for bids on the sanitary sewer project and opened all bids on March 25, 1982.

6. Bidders could bid on each of three contracts separately or on the three contracts combined.

---

1. 2 Pa.C.S.A. §§551 through 555, §§751 through 754.

2. 53 Pa.C.S.A. §301 et seq.

7. Plaintiff Myers bid on Contract 1 and Contract 3, separately.

8. Bid opening revealed that low bids on the three contracts separately were as follows:

Contract 1: Plaintiff Myers

Contract 2: Marona Construction Co.

Contract 3: Harold R. Tripp, Inc.

9. The addition of these individual low bids equalled approximately $5,469,000.

10. Low bid on the three contracts combined was Marona Construction Company's bid of approximately $5,778,000.

11. The combined low bid by Marona Construction Company was approximately $309,000 more than the addition of the low bids on each contract.

12. After corrections, the difference between Marona Construction Company's combined low bid and the addition of the separate low bids on each contract was decreased to approximately $207,000.

13. A timely request to withdraw a bid was received by defendant authority from Harold R. Tripp, Inc., in accordance with the appropriate provisions of the Public Contracts—Withdrawal of Bids Act.[3] Defendant authority set up a hearing for the applicant on April 5, 1982.

14. The parties stipulated that counsel for plaintiff Myers telephoned the solicitor for defendant authority and requested that Myers be allowed to attend the April 5, 1982, hearing. The solicitor for defendant authority responded that no outside parties would be permitted to attend.

15. Plaintiff Myers did not attend the April 5, 1982, hearing on Harold R. Tripp's, Inc., bid withdrawal.

16. Harold R. Tripp attended the April 5, 1982,

---

3. 73 Pa.C.S.A. § 1601 et seq.

hearing. Tripp represented that his auditors had missed an item in calculating its bid which resulted in a $100,000 miscalculation. The hearing lasted several hours. After the hearing was concluded and Tripp had departed, the authority members did not engage in any discussion regarding the allowance of the bid withdrawal.

17. At 7:30 pm on April 15, 1982, the next public meeting of defendant authority was scheduled. Prior to this meeting, a closed executive session was held. At the executive session, the Harold R. Tripp, Inc., bid withdrawal was discussed in regard to the reasons for withdrawal; the added cost to Harold R. Tripp, Inc., if it were not allowed to withdraw; and legal ramifications of allowing the withdrawal. The solicitor for the authority explained the distinctions between clerical and judgment errors.

18. At the public meeting, a prepared resolution to allow the bid withdrawal of Harold R. Tripp, Inc., was read. The authority solicitor and bond counselor publicly discussed the legal ramifications of allowing the withdrawal. A vote was taken and the resolution was passed, with one dissenting vote.

19. No meetings or discussions between authority members were held with regard to the Harold R. Tripp, Inc., bid withdrawal, other than the meetings of April 5, 1982, and April 15, 1982.

20. A. Ross Myers, Vice-President of plaintiff Myers, and plaintiff George attended the public meeting of April 15, 1982. After the meeting, they were handed a complete transcript of the April 5, 1982, hearing. Harold R. Tripp was not present at the April 15, 1982, meeting.

21. The consequence of the authority's action to grant the bid withdrawal of Harold R. Tripp, Inc., was that the new low bid on Contract 3, added to the prevailing low bids on Contracts 1 and 2, equalled

approximately $5,866,000. This new amount was now *greater* than the combined low bid by Marona Construction Company of approximately $5,778,000. Thus, the successful low bidder on the whole project became Marona Construction Company rather than the three individual low bidders, of which plaintiff Myers was one.

22. Prior to the meeting of April 15, 1982, A. Ross Myers called defendant authority's solicitor to advise him that the owner of Harold R. Tripp, Inc., and the owner of Marona Construction Company are brothers and that Harold R. Tripp, Inc., often does subcontracting work for Marona Construction Company.

23. After this information was received, the solicitor for the authority sent A. Ross Myers a telegram requesting any financial information about the connection between the two companies which would prevent Marona Construction Company from being designated as the low bidder if Tripp were allowed to withdraw.

24. A. Ross Myers replied by letter to the solicitor for defendant authority that he had no such information.

## DISCUSSION

### I. Standing To Sue

The first issue encountered in this matter is whether or not plaintiffs have standing to bring this suit. Plaintiffs rely on the comprehensive opinion of the Pennsylvania Supreme Court in William Penn Parking Garage, Inc. v. City of Pittsburgh, 464 Pa. 168, 346 A. 2d 269 (1975), which establishes the general requisites for standing. That case states that "one who seeks to challenge governmental action must show a direct and

substantial interest. . . . In addition, he must show a sufficiently close causal connection between the challenged action and the asserted injury to qualify the interest as 'immediate' rather than 'remote'." 464 Pa. at 202, 346 A. 2d at 286.

Plaintiff George asserts that as a taxpayer, her interest is direct, substantial, and immediate. While it is well settled that a taxpayer is permitted to sue in order to prevent waste and the unlawful use of public funds or property, see Faden v. Philadelphia Housing Authority, 424 Pa. 273, 227 A. 2d 619 (1967); Price v. Philadelphia Parking Authority, 422 Pa. 317, 221 A. 2d 138 (1966); this broad assertion is not to be indiscriminately applied. To maintain such a taxpayer's suit, the taxpayer must be a taxpayer *to the fund which is proposed to be expended:* Coxe v. Com., 34 D. & C. 2d 221 (1964); Ladd v. Reynolds, 2 D. & C. 2d 78 (1954); Naugle v. Vaux, Secretary of Health, 68 D. & C. 135 (1949). The court reasoned in Naugle, Id. at 140:

Since a plaintiff's right to maintain a taxpayer's bill "depends entirely on whether he is a bona fide taxpayer" and rests solely upon "the ground that his pecuniary interest has been invaded," it must follow that he must be a taxpayer to the particular fund from which the alleged unlawful expenditure is to be made. As this is necessary to his right to maintain the bill he must allege it in the bill. See Equity Rule 34; Goslin, Admr., v. Edmunds, 325 Pa. 154, 159 (1937); Watkins and Miller v. Watkins, 101 Pa. Super. 426, 429 (1931).

The court in Price, supra, reflected the viability of this qualification where it agreed with the statement of the chancellor below that "to the extent that real estate tax revenues will be diminished by an illegal exemption, and hence be unavailable for

future use, . . . [Plaintiffs] *as contributors to that fund* will have suffered a pecuniary loss." (Emphasis added.) Id., 422 Pa. at 326, 221 A. 2d at 143 (1966).

Under the Borough Code,[4] joint sewer projects may be funded by legal assessments upon the property benefited, and "Any portion of the cost of such improvement not assessed or not assessible shall be paid by the respective cities, boroughs, and townships joining, as may be agreed upon." 53 Pa.C.S.A. §47021. Therefore, the improvement could possibly be paid for entirely through the general funds of the respective municipalities, entirely through assessment against the properties specially benefited, or through a combination of general funds and special assessments. See 27A P.L.E. Municipal Corporations §261.

Plaintiff George has completely failed to show that she is a taxpayer to the fund which will be expended for the sanitary sewer project. First of all, it does not appear in the pleadings or testimony adduced at trial where the funds come from which are to be expended for the sanitary sewer project. Secondly, it is not apparent what tax funds plaintiff George pays into. While the complaint contains an allegation that George is a resident and taxpayer of the area to be served by the sanitary sewer project, the answer denied that she was a property owner. George did not appear to testify at trial on these essential matters; however, at the time of oral argument, her attorney filed and submitted to the court an affidavit by George regarding her taxpayer status.

An affidavit may be considered prior to trial in conjunction with a motion for summary judgment,

---

4. 53 Pa.C.S.A. §45101 et seq.

Pa.R.C.P. 1035, but it would be improper to allow a sworn statement to be tendered in lieu of testimony at trial. To do so would deprive the opposing party of its fundamental right to cross-examination. Thus, the record before us is limited to the unopposed allegations in the complaint that George is a resident, but not property owner, of the area to be served by the sewer project, and that she is a taxpayer. These facts are insufficient to fulfill the requirements for taxpayer standing.

Even considering plaintiff George's affidavit, the facts it represents would not provide her with taxpayer standing. That affidavit indicated that George is taxpayer of the Borough of Stockertown to the extent that she pays the following taxes: Nazareth Area School District Per Capita/Residence Tax, Nazareth Area School District Occupation Tax, and Borough of Stockertown Occupational Privilege Tax. She is a tenant in the area to be served by the sanitary sewer project; she does not own property in this area and does not pay any property tax to the Borough of Stockertown.

Clearly, if the project is to be funded exclusively by assessments against the benefited property, plaintiff George as a mere tenant will not have any direct, pecuniary interest in the subject expenditure. Even if general funds are used to subsidize the project, plaintiff George has not presented any evidence from which we could conclude that *her* tax burden in the form of a school district Per Capita/Residence Tax, a school district Occupation Tax, and a borough Occupational Privilege Tax, will be affected. In the absence of evidence regarding the source of this project's funding, we may not speculate as to whether or not plaintiff George's tax burden will be influenced by the sanitary sewer project. Plaintiff George has failed to demonstrate that

she has a direct, substantial, and immediate interest which would afford her standing to question the authority's action. Her action against the authority must be dismissed.

Plaintiff Myers asserts an independent basis for standing. It has admitted that it is not a taxpayer to the sanitary sewer project area, and so it cannot predicate standing on that basis. Myers is also foreclosed from general standing based on its status as a disappointed low bidder since it has long been recognized that such a claimant has no injury which entitles him to redress in court: Com. ex rel. Snyder v. Mitchell, 82 Pa. 343 (1876). Myers attempts to base its standing, rather, on a novel invocation of the Local Agency Law. Specifically, Myers relies on 2 Pa.C.S.A. § 752:

Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

While we do not yet address the application of the Local Agency Law to the procedures of public contracting, even assuming that Local Agency Law applies, plaintiff Myers does not qualify under this statute.

To come within the procedural protections of the Local Agency Law, plaintiff Myers must demonstrate that it has an enforceable personal or property right which has been affected by the local agency adjudication: In re Ditzler, _____ Pa. Commw. Ct. _____, 437 A. 2d 1071 (1981). Myers maintains that it has such a property right in that a "1.6 million dollar contract" was taken away from Myers when Harold R. Tripp, Inc., was allowed to withdraw its bid. Myers contends that as a result of

this action, it suffered a direct pecuniary loss which surely satisfies the standing requirements. We disagree.

In order to have a property interest in a public works contract, the party making the claim must show that it has a "legitimate claim of entitlement." Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Myers' interest in the prospective "1.6 million dollar contract" is far short of such a "legitimate claim of entitlement." While Myers is undisputedly one of the three contractors who placed the original low bids, contract 1 was never awarded to it. Furthermore, if Myers claims its entitlement is based on the statute that an authority which decides to contract[5] must do so with the "lowest responsible bidder,"[6] that statute fails to assist him for two reasons: (1) Myers was never determined to be the "lowest responsible bidder" on contract 1; and, more significantly, (2) "lowest responsible bidder" statutes have been held *not* to create property rights in one who bids on a contract, since they exist only to protect taxpayers from a wasteful or fraudulent expenditure of public funds: R.S. Noonan, Inc. v. York School District, 400 Pa. 391, 162 A. 2d 623 (1960); J.P. Mascaro & Sons, Inc. v. Township of Bristol, 497 F. Supp. 625 (E.D. Pa. 1980)

Thus, the fact that Myers was low bidder on contract 1 is not enough to endow it with a claim of entitlement. Its interest in the "1.6 million dollar contract" is insufficient to trigger the coverage of the Local Agency Law. In the absence of any other

5. A municipal authority has the right to reject all bids presented to it: Ritter v. Upper Southampton Sewer Authority, 12 Bucks 542 (1963).

6. 53 Pa.C.S.A. §312.

evidence of an enforceable personal or property right which has been affected by the authority's adjudication, Myers cannot take advantage of the Local Agency Law as a springboard for standing which otherwise does not exist. Its action against the authority must be dismissed.

## II. Propriety Of The Authority's Action

Even assuming that plaintiffs could surmount the standing hurdle, their claims of impropriety of the authority's action are without merit.

Plaintiffs attack the procedure followed by the authority on several grounds: (1) both allege that, in contravention of the Open Meeting Law,[7] "formal action" was taken by the authority prior to the public meeting of April 15, 1982; (2) both allege that, based on Local Agency Law, they should have been given notice and an opportunity to be heard at the April 5, 1982, hearing at which Harold R. Tripp presented evidence and explanations for his requested withdrawal; and (3) plaintiff George alleges that the authority's determination to excuse the bid of Harold R. Tripp, Inc., was without any foundation. An analysis of the applicable law and the evidence adduced at trial discloses the fallacy of these arguments.

In regard to plaintiffs' first contention, plaintiffs openly admit that it is based on pure supposition. At the public hearing of April 15, 1982, a prepared resolution to allow the bid withdrawal, replete with "legalese," was presented and after a short discussion, was voted on and passed. Plaintiffs conjecture that since the resolution was obviously drawn up in advance of the public meeting, and since discus-

---

7. 65 Pa.C.S.A. §261 et seq.

sion by the authority members was scanty, some clandestine decision must have been made prior to the public hearing. Such a clandestine decision, they argue, would constitute "formal action"[8] and thus be subject to §262 of the Open Meeting Law:

The meetings or hearings of every agency at which formal action is scheduled or taken are public meetings and shall be open to the public at all times. No formal action shall be valid unless such formal action is taken during a public meeting.

While we marvel at plaintiffs' ingenuity, they have failed to present an iota of evidence that any official policy was set or vote taken previous to the public hearing on April 15, 1982. The authority, however, supplied ample evidence to the contrary in the testimony of Beverly Van Duzen. Van Duzen is a member and secretary of the authority and attended and took the minutes of the bid withdrawal hearing of April 5, 1982, the executive session of April 15, 1982, and the public hearing of April 15, 1982. Van Duzen was not aware of any other private sessions and he testified that no poll was taken or decision made at any time prior to the vote at the public hearing. We found Van Duzan's testimony credible. In light of this evidence and the presumption that the acts of executive officials are based upon proper consideration and their decisions are reached in a legal way, Service Supply Corporation v. Hornbeck, 86 Dauphin 44 (1966), we decline to engage in bald speculation. Plaintiff's allegation that "formal action" was secretly taken by the authority in contravention of the Open Meeting Law is without merit.

---

8. " 'Formal action' means the taking of any vote on any resolution, rule, order, motion, reguation or ordinance or the setting of any official policy. . . . " 65 Pa.C.S.A. §261.

Plaintiffs' second allegation is premised on the applicability of the Local Agency Law to the bid withdrawal proceedings. They posit that the Public Contract—Withdrawal of Bids Act is incomplete and that its "gaps" should be filled by reference to the Local Agency Law. While the Public Contract—Withdrawal of Bids Act clearly outlines the procedures which both the contracting body and the withdrawing bidder must conform to, it fails to provide for any participation in these proceedings by taxpayers and other bidders whose status may be affected if the bid is allowed to be withdrawn. In the absence of such provisions, plaintiffs argue, the Local Agency Law should be resorted to. Furthermore, they assert that under the Local Agency Law, they have the right to notice of the bid withdrawal hearing, an opportunity to be heard, and the right to reasonable examination and cross-examination: 2 Pa.C.S.A. §§553, 554.

Ignoring the fact that neither party has advanced an enforceable personal or property right which would even entitle it to the Local Agency Law protections, In re Ditzler, supra, we find that the Public Contract—Withdrawal of Bids Act is a comprehensive measure which cannot be supplemented as plaintiffs suggest. Pertinent sections of that act provide:

§1602. Withdrawal of bids; grounds; notice; restrictions; regulations

A bidder to any construction contract for the construction, . . . of any public building or other public improvement . . . may withdraw his bid from consideration after the bid opening . . . if the price bid was submitted in good faith, and the bidder submits credible evidence that the reason for the price bid being substantially lower was a clerical mistake as opposed to a judgment mistake, and was actually

due to an unintentional and substantial arithmetical error or an unintentional omission of a substantial quantity of work, labor, material or services made directly in the compilation of the bid; provided, (i) notice of a claim of the right to withdraw such bid is made in writing with the contracting body within two business days after the opening of bids; and (ii) the withdrawal of the bid would not result in the awarding of the contract on another bid of the same bidder, his partner, or to a corporation or business venture owned by or in which he has a substantial interest. . . .

§1604. Contest of right to withdraw; hearing; notice; record of evidence; order; arbitration

(a) *If the contracting body intends to contest the right of a bidder to withdraw a bid*, it shall hold a hearing thereon within ten business days after the opening of such bids and issue an order allowing or denying the claim of such right within five days after the hearing. The contracting body shall give to the withdrawing bidder timely reasonable notice of the time and place of any such hearing. The contracting body shall make a stenographic record of all testimony and other evidence presented at the hearing. . . . (Emphasis added.)

The procedure contemplated by the act, therefore, is for the bidder requesting withdrawal to submit evidence of his mistake to the contracting body. *If* the contracting body then intends to *contest* the withdrawal, it must schedule a hearing for the bidder requesting withdrawal. It is obvious, therefor, that *if* the contracting body decides it will *not contest* the withdrawal, being satisfied on the evidence submitted that the error was clerical in nature and the withdrawal was made in good faith, no hearing with the bidder who requests withdrawal is required at all.

Since a hearing with the withdrawing bidder is *optional* under the Public Contract—Withdrawal of Bids Act, plaintiffs' demand for participation so that they may examine and cross-examine the withdrawing bidder would contradict that act rather than merely augment it. Their demand would require a full-blown hearing even in those instances where the act only requires the submission of evidence. Where a general provision in a statute is in conflict with a special provision in another statute, the special provision shall prevail: Olshansky v. Montgomery Court Election Board, 488 Pa. 365, 412 A. 2d 552 (1980), see 1 Pa.C.S.A. §1933. The Public Contract—Withdrawal of Bids Act has outlined a specific, efficient procedure which we cannot undermine by holding that every taxpayer and every bidding contractor has a general right under the Local Agency Law to require a hearing and active participation therein. The Local Agency Law does not afford plaintiffs a foothold into the pat procedure for the withdrawal of a bid.

Plaintiff George's final argument is that the authority's decision to allow Harold R. Tripp, Inc. to withdraw its bid was without foundation. A taxpayer who attempts to set aside an action by a municipal authority must show bad faith, fraud, capricious action, or abuse of discretion. Courts will not interfere in the functioning of an administrative body unless there has been a manifest or flagrant abuse of discretion or a purely arbitrary execution of its duties: Long v. Highland Sewer Water Authority, 27 Cambria 42 (1963). Furthermore, plaintiff George must overcome the presumption that the acts of executive officials are based on proper consideration: Service Supply Corporation, supra.

Plaintiff George has presented no evidence to

support her allegation that the authority's decision was without foundation, and she has not even attempted to show bad faith, fraud, capricious action, or abuse of discretion. In light of this total failure of proof, this final claim must fail.

## CONCLUSIONS OF LAW

1. Plaintiff George has no taxpayer standing since she has not shown that she is a taxpayer to the fund which is proposed to be expended.

2. Plaintiff Myers has no legitimate claim of entitlement to a public contract merely by virtue of being a low bidder on that contract.

3. Plaintiff Myers has no standing as a taxpayer, as a disappointed bidder, or as one aggrieved by an adjudication of a local agency.

4. No "formal action" was taken by the authority in violation of the Open Meeting Law.

5. The Public Contract—Withdrawal of Bids Act is comprehensive and exclusive in the procedures outlined for the withdrawal of bids.

6. The action of the authority was not a product of bad faith, fraud, capricious conduct, or an abuse of discretion.

## DECREE NISI

And now, July 8, 1982, in accordance with the foregoing adjudication, it is ordered, adjudged, and decreed that the relief prayed for in plaintiffs' complaint is denied.

The prothonotary shall give notice to counsel for the parties of the entry of this decree nisi and if not exceptions are taken within ten days this decree nisi shall become a final decree.